**Patrick J. WALKER;  Joe A. Young; Loren Q. Quitevis;  John Peterson, Appellants,**

v.

**NATIONAL CITY BANK OF MINNEAPOLIS, Appellee.**

No. 93–1976.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1993.

Decided March 14, 1994.

Counsel who presented argument on behalf of appellant was Neal J. Shapiro, Minneapolis, MN. Additional atty. appearing on the brief was Matthew B. Newman.

Counsel who presented argument on behalf of appellee was Robert V. Atmore, Minneapolis, MN. Additional atty. appearing on the brief was Mark A. Jacobson.

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, JOHN R. GIBSON,* Senior Circuit Judge, and WOODS,** District Judge.

HENRY WOODS, District Judge.

The district court [1] granted summary judgment in favor of National City Bank (hereinafter "NCB") in this ERISA action where NCB acted as trustee for the ERISA plan under which plaintiffs were beneficiaries. This court reviews the district court's granting of summary judgment *de novo*. The summary judgment cannot stand unless the court is convinced that there is no genuine issue as to any material fact. The material facts are uncontested, making it appropriate for summary disposition. We affirm the district court.

* The HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted, and took senior status on January 1, 1994, before the opinion was filed.

** The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable Donald Alsop, United States District Judge for the District of Minnesota.

## FACTS

Plaintiffs were beneficiaries under an ERISA plan (hereinafter "the Plan"). One year after NCB became trustee, the employer (which also acted as the plan administrator) filed a Chapter 11 bankruptcy petition. Under the terms of the reorganization plan, the employer was to make regular contributions into the Plan. It is undisputed that when concerned employees visited with a vice president of the bank about their fears that the employer would not make required contributions, they were assured that the bank would serve as a "watchdog" and would inform employees if the employer failed to make its payments to the ERISA plan.

In fact, the employer did not make payments as required and the bank admits it knew that the payments were not being made. The bank further concedes that even when the employees made a second visit to inquire about employer contributions, they were not informed of the employer's delinquency.

■ It is undisputed that the bank was a fiduciary under the plan. Its obligation was to the beneficiaries. The issue before the district court was whether a trustee in an ERISA plan owes a duty, as a fiduciary, to inform beneficiaries of an employer's failure to make contributions required under the terms of the plan, when the duty to inform is specifically assigned to the plan administrator and not the trustee. If we decide this contention adversely to the beneficiaries, then we must determine whether the NCB's vice president's promise to be the "watchdog" created an affirmative duty on the part of the bank to inform the beneficiaries of the employer's delinquency.

■ One of the central purposes behind ERISA was the creation of employee benefit plans with terms that were certain and unambiguous. To that end, Congress expressly required that all terms, in order to be enforceable, be written. This construct impacts both issues currently before us.

Under the terms of the plan, the duties of the trustee, plan administrator and employer were clearly set out in writing. The duty to notify was delegated to the plan administrator. Unfortunately for the beneficiaries, the employer was the plan administrator, leaving the beneficiaries essentially unprotected. Nonetheless, this court cannot undermine such an important principle as the requirement that all provisions of an ERISA plan be in writing. To do so would introduce an element of uncertainty to an otherwise predictable and unambiguous statute. While it may work a hardship on the beneficiaries in this case, it would not be advisable to destabilize ERISA by opening the door to unwritten provisions.

The Plan in this case sets forth a clear division of responsibilities. As Trustee, the Bank's responsibilities included investing and managing the Plan's assets, furnishing an annual statement of account to the Employer, Plan Administrator and Advisory Committee, paying out benefits to participants and beneficiaries as directed by the Advisory Committee, and paying the expenses of administering the Trust. *See* Plan, ¶¶ 10.03, 10.05, App. 54–56. The Plan did not impose on the Bank any responsibility whatsoever for communication with beneficiaries and participants of the Plan. The Plan specifically provided that "[t]he Trustee ... shall have no duty to see that the contributions received [from the Employer] comply with the provisions of the Plan" and that "[t]he Trustee shall not be obliged to collect any contributions from the Employer." *See* Plan, ¶ 10.02, App. 54. Finally, the Plan provided that the Trustee should not have any responsibility for any action required by the Plan to be taken by the Employer or other fiduciaries. *See* Plan, ¶ 11.02, App. 58–59. Thus, the language of the Plan clearly established that the Bank had no duty or responsibility to monitor contributions to the Plan or to notify participants if contributions ceased or became delinquent.

The Plan allocated to M.W. Ettinger (hereinafter "MWE"), as Plan Administrator and Employer, a variety of responsibilities.[2] As

---

2. The relevant provisions of the Plan are as follows:

1.04 "Plan Administrator" shall be M.W. ETTINGER TRANSFER AND LEASING CORP.

the Employer, MWE had the duty to determine and make contributions to the Trust. *See* Plan, ¶ 3.02, App. 40. As Plan Administrator, MWE had "full responsibility for compliance with the reporting and disclosure rules under ERISA" and was required to furnish participants and beneficiaries all information required by ERISA concerning any material change in the Plan. *See* Plan, ¶¶ 1.04, 8.06, App. 34, 49. These provisions clearly establish that the sole responsibility for determining, making and notifying participants regarding contributions to the Plan was allocated to MWE as Employer and Plan Administrator.

The district court was correct in holding that the trustee's obligations under the plan were only those written into the plan itself. This is particularly reasonable when the duty to notify beneficiaries of a problem are specifically designated to another entity.

This court has held that, unless ERISA mandates otherwise, division of authority in the plan determines the duties of the various fiduciaries. "The legislative history demonstrates that the trust instrument is to be followed unless it is inconsistent with the fiduciary requirements set out in ERISA." *Blackmar v. Lichtenstein,* 603 F.2d 1306, 1309 (8th Cir.1979). In addition to the fact that the plan does not conflict with ERISA, it is consistent with a 1987 amendment which added a section entitled "Notice of Failure to Meet Minimum Funding Standards." This new provision specifically places responsibility for notifying beneficiaries of an employer's

missed contributions on the *employer,* not the *trustee:* "If an employer maintaining a plan ... fails to make a required installment or other payment ... to a plan before the 60th day following the due date for such installment or other payment, the employer shall notify each participant and beneficiary ... of such plan of such failure." 29 U.S.C. § 1021(d)(1).

Where, as here, the allocation of fiduciary duties does not conflict with ERISA, the Act specifically provides for such allocation. ERISA specifies that there must be a named fiduciary who is responsible for the "operation and administration of the plan," 29 U.S.C. § 1102(a),[3] and provides for a trustee to perform the separate and distinct function of managing plan assets, 29 U.S.C. § 1103(a). The Department of Labor, charged with implementing and regulating ERISA, has clearly stated that where, as here, the Plan allocates specific duties to specific fiduciaries, each fiduciary is responsible only for the responsibilities allocated to it. *See* 29 C.F.R. § 2509.75–8, FR–16 (1992) (personal liability of a fiduciary limited to the fiduciary functions performed with respect to the plan[4]); 29 C.F.R. § 2509.75–8, FR–13 (1992) (named fiduciaries will not be liable for acts and omissions properly allocated to other fiduciaries); 29 C.F.R. § 2509.75–8, D–4 (1992) (liability of fiduciary limited to scope of fiduciary duty).

In *Kerns v. Benefit Trust Life Ins. Co.,* 992 F.2d 214, 217 (8th Cir.1993), this court said:

> In addition to his other duties, the Plan Administrator shall have full responsibility for compliance with the reporting and disclosure rules under ERISA as respects this Agreement.
> 3.02 *DETERMINATION OF CONTRIBUTIONS.* The Employer, from its records, shall determine the amount of any contributions to be made by it to the Trust under the terms of the Plan.
> 8.06 *NOTICE OF CHANGE IN TERMS.* The Plan Administrator, within the time prescribed by ERISA and the applicable regulations, shall furnish all Participants and Beneficiaries a summary description of any material amendment to the Plan or notice of discontinuance of the Plan and all other information required by ERISA to be furnished without charge.
> 9.12 *INDIVIDUAL STATEMENT.* As soon as practicable after the Accounting Date of each Plan Year but within the time prescribed by

> ERISA and the regulations under ERISA, the Plan Administrator will deliver to each Participant (and to each Beneficiary) a statement reflecting the condition of his Accrued Benefit in the Trust as of that date and such other information ERISA requires be furnished the Participant or Beneficiary. No Participant, except a member of the Advisory Committee, shall have the right to inspect the records reflecting the Account of any other Participant.

3. The named fiduciaries of the Plan in this case are MWE and Michael and Barbara Ettinger. First Amended Complaint, ¶¶ 3, 7, App. 1–3.

4. The sole exception to this limitation is where a fiduciary runs afoul of the co-fiduciary liability provisions of ERISA. *See* 29 C.F.R. § 2509.75–8, FR–16 (1992). Co-fiduciary liability is not alleged or argued in this case.

Fiduciary status under § 1002(21)(A) is not "an all-or-nothing concept ... [A] court must ask whether a person is a fiduciary with respect to the particular activity in question." *Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 61 (4th Cir.1992), *cert. denied,* [——] U.S. [——], 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993); *see Leigh v. Engle,* 727 F.2d 113, 133 (7th Cir.1984). Even if Benefit Trust was an ERISA fiduciary with respect to claims handling, we agree with the district court that it was not a fiduciary with respect to the functions at issue in this case—participant and beneficiary notification, premium payment, and policy lapse and reinstatement.

In *Coleman* cited by Judge Loken in this quotation, the Fourth Circuit declined to find an insurance company liable for failing to notify persons covered under an employer's group health insurance policy that it had cancelled the policy because the employer did not make premium payments. The *Coleman* court reversed the trial court's grant of a motion for summary judgment in favor of the plaintiff, a plan beneficiary, and remanded to the district court with instructions to enter summary judgment in favor of the defendant. The Court reversed because "[w]e believe ... that in concluding that Nationwide was a fiduciary who had committed a breach, the district court failed to follow the allocation of responsibilities that the plan documents themselves provided." *Id.* at 60 (emphasis supplied). *Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 60 (4th Cir.1992).

Plaintiff asserts in count 6 of the First Amended Complaint, that even if the bank had no responsibility under the plan and/or ERISA to disclose the employer's missed contributions, the bank assumed such a duty when its vice president promised that the bank would notify beneficiaries if the employer's contributions were not being made.

■■■ Clearly, if the claim is one for state law breach of contract, the claim is preempted by ERISA. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Alternatively, if plaintiffs' claim that the promise modified the plan giving rise to additional duties to the trustee,

such a claim must fail because all such modifications must be in writing. *See* 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall ... (3) provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan ..."); *see also Coleman,* 969 F.2d at 59 (4th Cir. 1992) ("Oral or informal written modifications to a plan ... are of no effect."); *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1163–64 (3d Cir.1990); *Pizlo v. Bethlehem Steel Corp.,* 884 F.2d 116, 120 (4th Cir.1989) (rejecting claims because "they rest on an allegation that the pension plan was modified by informal and unauthorized amendment which, as a matter of law, is impermissible"); *Cleary v. Graphic Communications,* 841 F.2d 444 (1st Cir.1988).

The judgment is affirmed.