MINNESOTA DEVELOPMENTAL ACHIEVEMENT CENTER ASSOCIATION; Accessability, Inc.; Canby Developmental Achievement Center; Mille Lacs County Area Developmental Achievement Center; Norman County Developmental Achievement Center; Polk County Developmental Achievement Center; Todd County Developmental Achievement Center; Wadena County Developmental Achievement Center; Jeff Buchan, by Jim Buchan, his father and next friend; Lee Perry, by Phyllis Perry, his mother and guardian; Charles Racek, by Elizabeth Rossi, his sister and co-guardian, Plaintiffs–Appellants,

v.

Natalie HAAS–STEFFEN, in her capacity as Commissioner of the Minnesota Department of Human Services, Defendant–Appellee.

No. 93–1938.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1993.

Decided April 5, 1994.

Rehearing Denied May 10, 1994.

Thomas S. Darling, Minneapolis, MN, argued (Mary Martin, Gregory Merz and Jonathan Redgrave, on the brief), for appellant.

Counsel who presented argument on behalf of the appellee was Julie K. Harris, Asst. Atty. Gen., St. Paul, MN, argued (David P. Iverson, Asst. Atty. Gen., on the brief), for appellee.

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, JOHN R. GIBSON *, Senior Circuit Judge, and WOODS **, District Judge.

JOHN R. GIBSON, Senior Circuit Judge.

The Minnesota Developmental Achievement Center Association, other developmental achievement centers, and certain individuals associated with the centers appeal from the district court's [1] entry of summary judgment in favor of the Minnesota Department of Human Services regarding Minnesota's scheme for providing services to developmentally disabled citizens. Specifically, the district court held that the appellants were not "providers" under the Medicaid Act, 42 U.S.C. § 1396 (1988), and thus the Boren Amendment to the Act does not apply to changes made by Minnesota in its payment to developmental achievement centers. We affirm.

The State of Minnesota participates in Medicaid, a cooperative federal and state program through which the federal government distributes funds to participating states to provide health care services to needy individuals.[2] See 42 U.S.C. § 1396. The Department of Human Services, which provides a variety of social services for developmentally disabled people, has delegated to the counties the responsibility for planning, implementing and operating individualized social service plans. The counties contract with private facilities, known as developmental achievement centers, to provide day training and habilitation for mentally retarded persons living in intermediate care facilities.[3] Because the services these centers provide meet Medicaid requirements, the Depart-

ment can use federal Medicaid funds to pay for the day training and habilitation services. The Department pays the intermediate care facilities for the mentally retarded, which then assign their rights to Medicaid funds to the Department. The intermediate care facilities, which contract for services with the developmental achievement centers, receive the Medicaid funds and pass through the payments to the developmental achievement centers.

Developmental achievement centers are paid based on a payment rate negotiated by each county and each individual center, subject to approval by the Commissioner. The developmental achievement centers are not independently fundable under the Medicaid Act as mandatory or optional services, and the Centers do not enter into "provider agreements" with the State to be Medicaid providers.[4] See 42 C.F.R. § 400.203 (1992).

Before 1991, the Minnesota Medicaid program provided that the maximum rate a county could pay a developmental achievement center would increase automatically each year by a percentage no greater than that "projected percentage change in the urban consumer price index ... for the upcoming calendar year." Minn.Stat. § 252.46, subd. 3 (1990). In 1991, the Minnesota legislature eliminated the automatic increase to the maximum rate for the biennium ending June 30, 1993. Act of June 4, 1991, ch. 292, art. 4 § 9, subd. 3, 1991 Minn.Laws 1781. In 1992, Minnesota eliminated the automatic in-

---

* The HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted, and took senior status on January 1, 1994, before the opinion was filed.

** The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

2. State participation in Medicaid is voluntary, but once a state participates, it must comply with the requirements of the Medicaid statute to receive funds. See Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 502, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990).

3. Under the Minnesota Medicaid program, day training and habilitation services include: "training, supervision, assistance, and other supportive activities designed and implemented ... to help [a mentally retarded] person attain and maintain the highest possible level of independence, productivity, and integration in the community where the person lives and works." Minn.Rules pt. 9525.1500, subp. 36.

4. The Medicaid Act specifies certain requirements that must be met by a provider of services to needy persons in order for that provider to receive Medicaid payments. For example, the provider must enter a "provider agreement" with the state Medicaid agency assuring that all applicable federal and state requirements will be met. 42 C.F.R. § 400.203 (1992).

crease beginning in 1994 and provided that the legislature would directly determine further increases in the maximum rate that developmental achievement centers providing day training and habilitation services could receive. Act of April 29, 1992 ch. 513, art. 7, § 12, Minn.Stat. § 252.46, subd. 12 (1992). The Centers filed suit seeking a preliminary injunction and a declaratory judgment that the 1992 law was invalid because it did not comply with the prerequisites of the Boren Amendment to the Medicaid Act, 42 U.S.C. § 1396a(a)(13)(A) (1988 & Supp. III 1991), and Minnesota state law. The Centers alleged that the Department violated the Medicaid Act and Boren Amendment by making a change in rates without complying with the Medicaid requirements, without providing the required notice, or without making findings that the new rates will be reasonable and adequate to pay the costs of providing necessary care. *See* 42 U.S.C. § 1396a(a)(13)(A). The Department filed a motion for summary judgment, arguing that the State was not required to comply with the requirements of the Boren Amendment because the Amendment does not apply to developmental achievement centers providing day training and habilitation services.[5]

Entering summary judgment for the Department, the district court found that the Centers are not "providers" within the meaning of 42 C.F.R. § 400.203 (1992), and therefore are not covered by Medicaid or the Boren Amendment. The court based this conclusion on the unambiguous definition of "provider" set forth in the regulations, as well as the interpretation of the Health Care Financing Administration, the federal agency charged with administering the Medicaid program. That agency submitted an affidavit stating that it does not interpret the Boren Amendment as including developmental achievement centers. Because the court found that the Centers were not providers, the court held that the Department had no obligation to comply with the Medicaid prerequisites before altering the Centers' rates for day training and habilitation, or to provide the Centers with advance public notice before changing the rates. The district court also ruled that the Commissioner had no duty under the Minnesota Medicaid plan to make any findings as to the 1992 rate changes.[6]

On appeal, the Centers argue that the Boren Amendment applies to the rates paid for day training and habilitation services provided by the Centers to residents of intermediate care facilities for mentally retarded individuals. They specifically argue that the Boren Amendment protections are not limited to Medicaid "providers."

■  We review the granting of summary judgment de novo. *Walker v. National City Bank of Minneapolis*, 18 F.3d 630, 632 (8th Cir.1994). Summary judgment is proper if, based on the pleadings and affidavits, there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■  The plain language of the Medicaid Act, its accompanying regulations, and agency interpretation show the shortcomings of the Centers' argument. First, the Boren Amendment expressly covers only three types of Medicaid providers: hospitals, nursing facilities and intermediate care facilities for the mentally retarded. *See* 42 U.S.C. § 1396a(a)(13)(A). The Centers do not fall within the definition of any of these entities. Second, the Centers are not "providers" within the language of the regulations because they do not furnish services "under a

---

5.  The Boren Amendment provides that a state plan for Medicaid assistance must:

    (13) provide (A) for payment ... of the hospital services, nursing facility services, and services in an intermediate care facility for the mentally retarded provided under the [state Medicaid] plan through the use of rates ... which the state finds, and makes assurances satisfactory to the Secretary [of Health & Human Services], are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards....

    42 U.S.C. § 1396a(a)(13)(A).

6.  The Centers have not challenged this ruling on appeal.

provider agreement with the Medicaid agency." *See* 42 C.F.R. § 400.203 (1992). The regulations unambiguously define a "provider" as an "individual or entity furnishing Medicaid services under a provider agreement with the Medicaid Agency." 42 C.F.R. § 400.203. Because the Centers have no such agreement, they are not covered by the Boren Amendment or the Medicaid Act. Considering that the Centers do not fall within the general definition in the regulations or the specific language in the Boren Amendment, we conclude that the district court properly found that the Centers are not covered.

We also find further support for our conclusion in the Health Care Financing Administration's interpretation of the Medicaid regulations. When interpreting a regulation, we give considerable weight to an agency's construction of a statutory scheme it is charged with administering or enforcing. *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). The district court had before it several statements indicating that the Administration does not consider developmental achievement centers to be Medicaid providers entitled to payment from Medicaid funds or subject to the requirements of the Medicaid Act. A 1985 letter showed that the Administration believed that the Department should stop treating developmental achievement centers as independent providers. This letter was in response to the Department's initial attempts to pay developmental achievement centers directly with Medicaid funds. We also observe that the developmental achievement centers are not required to comply with federal Medicaid certification standards overseen by the Administration.

The Centers point us to *Wilder v. Virginia Hospital Association*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), arguing that the Supreme Court held that health care providers are beneficiaries of the Boren Amendment. Specifically, the Centers contend that because the Court used the term "health care providers" numerous times

throughout the opinion, and "Medicaid providers" only once, that the Court believed generic health care providers are covered by the Amendment. We believe the Center misreads *Wilder*. There, the issue involved whether the Boren Amendment creates substantive federal rights enforceable by providers, rather than only by the federal agency. *Id.* at 501–02, 110 S.Ct. at 2513. The Court was not asked to consider, nor did it consider, whether the Amendment applies to entities other than the statutorily-defined "Medicaid providers." We find nothing in the Court's opinion to suggest that the Boren Amendment applies to more than institutional Medicaid providers.[7]

Finally, the Centers raise several other arguments which we have considered, but find without merit.

We affirm the district court's entry of summary judgment.

---

7. The Medicaid statute differentiates, for purposes not relevant here, between institutional Medicaid providers, such as hospitals, nursing facilities, and intermediate care facilities for the

mentally retarded, and non-institutional providers, which include individual physicians, professional associations, and other providers, *see* 42 U.S.C. § 1396a(a)(13)(A).