_____

No. 96-1102
_____

R. Scott Bannister, as Trustee;      *
Larry W. Borden, as Trustee;         *
Missouri Pacific Employees'          *
Health Association Plans;            *
PayFlex Systems, U.S.A., Inc.;       *
K. Russell Guethle, as Trustee,      *
                                     *
          Plaintiffs,                *
                                     *
     v.                              *
                                     *
Darrell Sorenson; Darrell            *
Sorenson & Associates, Inc.;         *
Dan Sorenson,                        *
                                     *
          Defendants.                *
                                     *
--------------------                 *  Appeal from the United States
                                     *  District Court for the District
Darrell Sorenson,                    *  of Nebraska.
                                     *
          Counter Claimant,          *
                                     *
Darrell Sorenson & Associates,       *
Inc.,                                *
                                     *
          Counter Claimant/          *
          Appellant,                 *
                                     *
     v.                              *
                                     *
Missouri Pacific Employees'          *
Health Association Plans,            *
                                     *
          Counter Defendant;         *
                                     *
PayFlex Systems U.S.A., Inc.,        *
                                     *
          Counter Defendant/         *
          Appellee,                  *
                                     *
Terry Haney; Dale Hogan,             *
                                     *
          Counter Defendants.        *
                        _____

          Submitted:  September 13, 1996

             Filed:  December 23, 1996

BEAM, Circuit Judge.

Darrell Sorenson & Associates, Inc. (DSA) appeals the district court's conclusion, on summary judgment, that DSA's state common law claim of breach of contract against PayFlex Systems U.S.A., Inc. (PayFlex) is preempted by the Employment Retirement Security Act (ERISA), 29 U.S.C. §§ 1001-1461. We remand for a determination of whether the federal courts have subject matter jurisdiction over this action and, if so, for further proceedings consistent with this opinion.

## I.    BACKGROUND

The dispute between DSA and PayFlex has its genesis in the services these two companies provided to the Missouri Pacific Employees' Health Association (MPEHA). All three organizations are based in Omaha, Nebraska. MPEHA provides health care benefits to active and retired employees of the Union Pacific Corporation. PayFlex claims that MPEHA was an employee welfare benefit plan under ERISA[1] at the time of the events giving rise to this action. DSA counters that MPEHA was not an ERISA plan.[2]

---

[1]ERISA defines an "employee welfare benefit plan" as:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or [other certain benefits or programs].

19 U.S.C. § 1002(1).

[2]DSA points to a 1990 advisory letter from the Department of Labor to MPEHA stating the Department's position that MPEHA was not

Darrell Sorenson, a former employee of Union Pacific, was hired by MPEHA in 1990 and became its president in 1992. In 1991, while employed by MPEHA, Sorenson formed DSA and became its president and sole shareholder. On July 1, 1991, Sorenson, acting on behalf of DSA, entered into a contract with PayFlex. Under the DSA-PayFlex contract, DSA agreed to perform certain benefits administration tasks incident to services PayFlex provided as a third-party administrator for employee health plans.

On August 6, 1991, PayFlex entered into a contract with MPEHA to serve as "plan supervisor" of MPEHA's benefits for Union Pacific employees. Under the PayFlex-MPEHA contract, PayFlex agreed to administer claims and prepare payments to health care providers on behalf of MPEHA. Pursuant to the prior DSA-PayFlex agreement, PayFlex delegated to DSA certain precertification and catastrophic case management services for MPEHA beneficiaries.

This arrangement did not last long. During 1992, PayFlex and MPEHA became dissatisfied with the quality of DSA's services. Sorenson (in his capacity as president of MPEHA) documented his view that PayFlex had failed to provide adequate services and (as president of DSA) contended that DSA had provided adequate services. In August, 1992, MPEHA fired Sorenson's son, Dan Sorenson, who had been hired as an MPEHA customer relations clerk the preceding April. Two months later, in October 1992, MPEHA fired Darrell Sorenson. A series of letters between Sorenson and officials of PayFlex and MPEHA detailed the souring relations among the three companies. To complete the collapse of this arrangement, PayFlex notified DSA on April 9, 1993, that it was rescinding its contract with DSA. PayFlex informed DSA that it was taking this action because of what it considered DSA's breach of the covenant of good faith and fair dealing, defaults in service, customer complaints, and DSA's fiduciary breaches.

---

an ERISA plan. PayFlex argues that the Department reversed its position in 1994, when it issued an advisory letter superseding the prior letter and stating that MPEHA was an ERISA employee welfare benefit plan.

Sorenson threatened legal action and requested mediation. Instead, MPEHA and PayFlex filed a complaint in federal district court, naming Darrell Sorenson, Dan Sorenson, and DSA as defendants. MPEHA and PayFlex asserted that the Sorensons and DSA had: (1) breached their fiduciary duties under ERISA; and (2) engaged in transactions prohibited under ERISA. MPEHA and PayFlex sought the return of certain salary payments made by MPEHA to Darrell Sorenson and Dan Sorenson and all payments made to DSA by PayFlex under their contract.

DSA and Darrell Sorenson then filed a series of complaints in state court. These complaints asserted that: (1) PayFlex had breached its contract with DSA; and (2) that PayFlex, MPEHA, and various executives of those organizations had conspired to tortiously interfere with Darrell Sorenson's and DSA's contractual rights. DSA asserted these same theories as counterclaims in the federal action initiated by MPEHA and PayFlex, and the state proceedings were stayed pending resolution of the federal case.

On July 17, 1995, the district court ruled on partial summary judgment that ERISA preempted all of DSA's and Sorenson's counterclaims. The court deferred entering judgment, pending resolution of PayFlex's and MPEHA's ERISA claims. In December 1995, the parties reached a partial settlement. DSA reserved the right to appeal the adverse judgment on its breach of contract claim against PayFlex.[3]

The district court approved the settlement, and made final its July summary judgment order. Despite the numerous claims and parties originally involved in this case, on appeal the parties present only one issue: does ERISA preempt DSA's state common law breach of contract claim against Payflex?

---

[3]MPEHA and PayFlex agreed to release all of their ERISA claims against DSA and the two Sorensons. DSA and the Sorensons released all their claims against MPEHA. DSA and Darrell Sorenson acknowledge that they are no longer pursuing Sorenson's individual claims nor DSA's tortious interference claims.

## II. DISCUSSION

ERISA comprehensively regulates certain employee welfare benefits and pension plans. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44 (1987). In order to achieve national uniformity in regulation of such plans, ERISA contains a preemption provision[4] that applies to state common law-based claims as well as state statutes. Kuhl v. Lincoln Nat'l Health Plan of Kansas City, Inc., 999 F.2d 298, 301 (8th Cir. 1993). ERISA preempts any state law that "relates to" an employee benefit plan. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983). The Supreme Court has characterized the scope of ERISA preemption as "deliberately expansive." Pilot Life, 481 U.S. at 46.

Not all state law claims that somehow affect a plan are preempted. The Supreme Court has noted that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law `relates to' the plan." Shaw, 463 U.S. at 100, n.21. Some actions involving ERISA plans are clearly of this sort: "run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan . . . although obviously affecting and involving ERISA plans and their trustees, are not pre-empted by ERISA." Mackey v. Lanier Collection Agency & Serv., 486 U.S. 825, 833 (1988).

Between the poles of those laws and claims that clearly "relate to" an ERISA plan and those that are clearly too tenuously related are a host of state laws that pose more difficult questions

---

[4]29 U.S.C. § 1144(a) provides that:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

The exceptions to section 1144(a) are not relevant to this case.

of preemption. In <u>Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.</u>, we examined a number of tests that courts have used in determining whether a state law "relates to" an ERISA plan. 947 F.2d 1341, 1344-45 (8th Cir. 1992). We determined that all of these tests were in some degree instructive, and set forth six factors for determining ERISA preemption that we distilled from the cases: (1) whether the state law negates a plan provision; (2) the effect on primary ERISA entities and impact on plan structure; (3) the impact on plan administration; (4) the economic impact on the plan; (5) whether preemption is consistent with other provisions of ERISA; and (6) whether the state law at issue is an exercise of traditional state power. <u>Id.</u> at 1345-50. While none of these factors is itself determinative, they "serve to focus and clarify the court's analysis." <u>Id.</u> at 1345.

DSA asserts that the district court erred in determining that DSA's state law contract action "relates to" an ERISA plan and is therefore preempted. DSA places great weight on the fact that the district court did not cite or specifically analyze the six factors discussed in <u>Arkansas Blue Cross & Blue Shield</u>. Rather, the court determined that the "state law claims affect relations between ERISA entities and, hence, are preempted by ERISA." <u>Bannister v. Sorenson</u>, No. 8:CV93-357, slip op. at 6. (D. Neb. filed July 17, 1995). The court did not use any other factor in analyzing whether DSA's claim "relates to" an ERISA plan.

We have previously applied <u>Arkansas Blue Cross & Blue Shield</u> only to issues involving the preemption of generally applicable state statutes, not to common law claims. <u>See</u>, <u>e.g.</u>, <u>Boyle v. Anderson</u>, 68 F.3d 1093, 1101-1110 (8th Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 1266 (1996) (applying <u>Arkansas Blue Cross & Blue Shield</u> in determining that ERISA does not preempt a state health provider tax); <u>Minnesota Chapter of Associated Builders & Contractors, Inc. v. Minnesota Dep't of Labor & Indus.</u>, 47 F.3d 975, 978 (8th Cir. 1995) (applying <u>Arkansas Blue Cross & Blue Shield</u> to find ERISA does not preempt prevailing wage statute). Furthermore, we have not invariably relied on <u>Arkansas Blue Cross & Blue Shield</u>

ourselves in deciding ERISA preemption cases. <u>See</u>, <u>e.g.</u>, <u>McCallum v. Rosen's Diversified, Inc.</u>, 41 F.3d 1239 (8th Cir. 1994). While helpful, the six factors are not themselves a magic formula for determining preemption, and our main task is to determine "the totality of the state [law's] impact on the plan." <u>Arkansas Blue Cross & Blue Shield</u>, 947 F.2d at 1345. Nonetheless, we believe that <u>Arkansas Blue Cross & Blue Shield</u> sets forth an analytical structure for ERISA preemption claims that facilitates reasoned decision-making and appellate review, and is applicable in both the common law and statutory environment.

In this context, then, we note that the remaining dispute does not directly involve MPEHA but rather two of its subcontractors. The undisputed facts advanced by PayFlex in support of summary judgment allow us to consider how, if at all, determination of the dispute will impact upon the terms of the plan, its administration and its economic viability. Upon application of the <u>Blue Cross & Blue Shield</u> factors we conclude that ERISA does not preempt DSA's claim. Indeed, the issues appear to relate only peripherally to MPEHA and its fundamental obligations to Union Pacific employees.

We reach this decision only provisionally, however. This is because we are unable to determine whether the MPEHA plan is an "ERISA plan" at all, and thus whether the federal courts have subject matter jurisdiction over this action. A determination that the involved plan is an "ERISA plan" is a requirement for federal subject matter jurisdiction premised on ERISA, and if the evidence does not show that the plan is an "ERISA plan," the court must dismiss the case. <u>Kulinski v. Medtronic Bio-Medicus, Inc.</u>, 21 F.3d 254, 256 (8th Cir. 1994). Furthermore, subject matter jurisdiction is a nonwaiveable issue that we must consider on appeal, even if the parties have not presented the issue. <u>Id.</u> <u>See also</u> <u>Jader v. Principal Mut. Life Ins. Co.</u>, 925 F.2d 1075, 1077 (8th Cir. 1991).

Whether an entity is an "ERISA plan" or administers benefits that are subject to ERISA is a mixed question of fact and law. <u>Kulinski</u>, 21 F.3d at 256. "To qualify as a 'plan, fund, or

program' under ERISA, a reasonable person must be able to `ascertain the intended benefits, a class of beneficiaries, source of financing, and procedures for receiving benefits.'" <u>Northwest Airlines, Inc. v. Federal Ins. Co.</u>, 32 F.3d 349, 354 (8th Cir. 1994) (quoting <u>Donovan v. Dillingham</u>, 688 F.2d 1367, 1373 (11th Cir. 1982) (<u>en banc</u>) and <u>Harris v. Arkansas Book Co.</u>, 794 F.2d 358, 360 (8th Cir. 1986)). An "ERISA plan" may be involved in a dispute even if the entity that supplies the benefits pursuant to a plan is not itself a "plan" within ERISA. <u>Donovan</u>, 688 F.2d at 1372.

In the proceedings below, MPEHA and PayFlex asserted that MPEHA is an ERISA plan, or alternatively that even if MPEHA itself is not an ERISA plan that it manages assets and benefits subject to ERISA. DSA, on the other hand, has asserted from the beginning of this lawsuit that MPEHA is not an ERISA plan, or was not at the time of the events giving rise to its claims. The district court made no findings on this issue. In its Memorandum and Order denying Dan Sorenson's motion to dismiss, the district court noted that MPEHA and PayFlex "assert that the Association [MPEHA] is an employee welfare benefit plan within the purview of ERISA, 29 U.S.C. § 1002(1)." <u>Bannister v. Sorenson</u>, No. 8:CV93-357, slip op. at 1 (D. Neb. filed June 21, 1995). Similarly, in granting summary judgment on DSA's and Darrell Sorenson's counterclaims, the court stated that "[t]he plaintiffs allege" that MPEHA is an ERISA plan. No. 8:CV93-357, slip op. at 2 (D. Neb. filed July 17, 1995). However, the trial court never made any findings on this basic jurisdictional issue before proceeding with its discussions of the substantive merits of these motions. While we tend to believe that MPEHA is an ERISA plan, we are unable to resolve from the record the underlying factual disputes necessary to establish federal jurisdiction. We conclude, therefore, that upon remand the district court must first determine whether MPEHA is, or at the time of the events in question was, a "plan, fund, or program" within the meaning of ERISA or manages assets and benefits subject

to ERISA.  See Jader, 925 F.2d at 1077 (remand is appropriate when jurisdiction premised on ERISA is unclear from record).[5]

## III. CONCLUSION

For the foregoing reasons, we vacate the judgment of the district court and remand for consideration of subject matter jurisdiction.  If the district court finds subject matter jurisdiction based upon ERISA, it should then conduct further proceedings consistent with this opinion.  If MPEHA is determined to have been an ERISA entity at relevant times, we note that the remaining claim would appear to fall within the trial court's supplemental jurisdiction under 28 U.S.C. § 1367, even though MPEHA has now been dismissed.  Thus, under such circumstances, the court is free to use its discretion to exercise jurisdiction or dismiss the case as permitted by section 1367(c).

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5]On appeal, both parties have continued to dispute strenuously whether Darrell Sorenson, DSA, or PayFlex are ERISA fiduciaries. However, this somewhat muddles the issue.  Whether an involved party is a fiduciary may be probative, but it is not a strict requirement in establishing ERISA preemption.  Consolidated Beef Indus., Inc. v. New York Life Ins. Co., 949 F.2d 960, 964 (8th Cir. 1991).  In any event, whether any of these parties is an ERISA fiduciary depends first on whether an ERISA plan is involved at all.