The PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al., Plaintiffs,

v.

NATIONAL PARK MEDICAL CENTER, INC., et al., Defendants.

State of Arkansas, Intervenor.

No. LR–C–95–514.

United States District Court, E.D. Arkansas.

Jan. 31, 1997.

As Amended March 17, 1997.

Tyson Foods, Inc., United Paperworkers Intern. Union, AFL–CIO, CLC, HMO Partners, Inc.

Allan W. Horne, Horne, Hollingsworth & Parker, Little Rock, AR, Byron L. Freeland, Mitchell, Williams, Selig, Gates & Woodyard, Little Rock, AR, Chet A. Roberts, Arkansas Blue Cross and Blue Shield, Little Rock, AR, Daly D.E. Temchine, Stuart M. Gerson, Epstein, Becker & Green, P.C., Washington, DC, for HMO Partners, Inc.

O. Jerome Green, Wallace & Green, Little Rock, AR, for Martha Flowers, M.D., James Trice, M.D., Horace Johnson, M.D.

Joann C. Maxey, Kaplan, Brewer & Maxey, P.A., Little Rock, AR, Michael W. Mitchell, Mitchell, Blackstock & Barnes, Little Rock, AR, for George A. Haas, O.D.

David Lawrence Ivers, Mitchell, Blackstock & Barnes, Little Rock, AR, for Y.Y. King, M.D., Bryan W. Russell, D.C.

Harold H. Simpson, II, Lynda Moneymaker Johnson, The Health Law Firm, Little Rock, AR, for American Medical Intern., Inc.

Philip E. Kaplan, Kaplan, Brewer & Maxey, P.A., Little Rock, AR, for Bryant Ashley, Jr., O.D.

Byron L. Freeland, Mitchell, Williams, Selig, Gates & Woodyard, Little Rock, AR, for American Ass'n of Health Plans, Inc.

Byron L. Freeland, Mitchell, Williams, Selig, Gates & Woodyard, Little Rock, AR, Daly D.E. Temchine, Stuart M. Gerson, Epstein, Becker & Green, P.C., Washington, DC, for Prudential Ins. Co. of America, Prudential Health Care Plan Inc., Arkansas AFL–CIO,

## ORDER

MOODY, District Judge.

This matter is before the Court on cross motions for summary judgment. For the reasons stated below, the plaintiffs' motion to declare Arkansas' Patient Protection Act of 1995 (the PPA), Arkansas Code Annotated §§ 23–99–201 to –209 (Michie Supp.1995), preempted by the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq., and for a permanent injunction of the enforcement of the PPA is granted, and the defendants' motion for declaratory and injunctive relief which would enforce the PPA is denied.

## I. *Procedural History*

Plaintiffs, Prudential Insurance Company of America ("Prudential"), Prudential Health Care Plan, Inc., d/b/a Prudential Health Care Plan of Arkansas ("Prudential HMO"), HMO Partners, Inc. ("HMO Partners"), Arkansas AFL–CIO ("AFL–CIO"), Tyson Foods, Inc. ("Tyson"), and United Paperworkers International Union, AFL–CIO, CLC ("UPIU"), filed a complaint seeking declaratory and injunctive relief.

Plaintiffs alleged that Arkansas' newly-enacted Patient Protection Act ("PPA") of 1995 was (1) preempted by 29 U.S.C. § 1144(a) of the Employment Retirement Income Security Act of 1974 ("ERISA"); (2) preempted by the Federal Health Maintenance Organization Act's provision 42 U.S.C. § 300e–10(a)(1995) ("Federal HMO Act"); (3) preempted by the Federal Employment Health Benefit Act provision 5 U.S.C. §§ 8901–8914 (1995) ("FEHBA") as to the plaintiffs HMO and Prudential; and in violation of 42 U.S.C. § 1983.

Named as defendants were the State of Arkansas, Governor Jim Guy Tucker; Attorney General Winston Bryant; Dr. Sandra Nichols, Director of the Arkansas Department of Health; and Lee Douglas, Commissioner of the Arkansas Department of Insurance.

Plaintiffs amended their complaint to add additional defendants American Medical International, Inc., d/b/a National Park Medical Center; Bryan Russell, D.C.; Y.Y. King, M.D.; George A. Haas, O.D.; and Bryan Ashley, O.D. The Court granted defendants' Lee Douglas, Sandra Nichols, Attorney General Winston Bryant, and Governor Jim Guy Tucker's motion to dismiss for failure to state a claim based on lack of a "case or controversy" between these parties.

National Park Medical Center filed a counterclaim seeking a declaratory judgment that the PPA is a law regulating insurance and is, therefore, not preempted by ERISA. National Park also sought an injunction requiring Prudential, Prudential HMO, and HMO Partners to comply with the PPA. The State of Arkansas intervened in defense of the PPA arguing that the case presented a Constitutional challenge to Arkansas statutes affecting the public interest.

Plaintiffs, defendants, and intervenor now move for summary judgment.

## II. *Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, and admissions, on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

There is no such "genuine" dispute if the evidence is such that a reasonable jury could not return a verdict for a nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable ... or is not significantly probative, summary judgment may be granted.

*Id.* at 249–250, 106 S.Ct. at 2511 (citations omitted). No genuine issue for trial exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party ..." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *See Rifkin v. McDonnell Douglas Corp.*, 78 F.3d 1277 (8th Cir.1996). All parties agree there are no genuine issues of material fact in dispute here and that summary judgment is appropriate.

## III. *The Patient Protection Act of 1995*

In 1995, the Arkansas Legislature passed the PPA with the specific intent:

that patients ... be given the opportunity to see the health care provider of their choice. In order to assure the citizens of the State of Arkansas the right to choose the provider of their choice, it is the intent of the General Assembly to provide the opportunity of providers to participate in health benefit plans.

Ark.Code Ann. § 23–99–202 (Michie Supp. 1995).

The law was made applicable to health benefit plans such as those administered and used by the plaintiffs. Ark.Code Ann. § 23–99–203(f). However, the Legislature carved out a category of health benefit plans to which, by its own terms, the PPA does not apply. Arkansas Code Annotated § 23–99–209 states:

The provisions of [the Patient Protection Act of 1995] shall not apply to self-funded or other health benefit plans that are exempt from state regulations by virtue of the federal Employee Retirement Income Security Act of 1974, as amended.

Ark.Code Ann. § 23–99–209.

By its terms the PPA is applicable to health care insurers which include the plaintiffs [1] and to health care providers which include the defendants.[2]

At the center of the present controversy is § 23–99–204 of the PPA, which prohibits health care insurers from imposing monetary advantages or penalties, or other conditions, under a health benefit plan that affect a beneficiary's choice among health care providers who participate in the plan according to the terms offered. *See* Ark.Code Ann. § 203–99–204.[3]

This section, known as the "Any Willing Provider" clause, also prohibits health care insurers from limiting or excluding health care providers qualified under § 23–99–203(d) and willing to accept the health benefit plan's terms and conditions from the opportunity to participate in the plan.

1. A health care insurer is defined by the statute to include, but not to be limited to, (1) insurance companies; (2) hospital and medical services corporations; (3) health maintenance organizations; (4) preferred provider organizations; (5) physician hospital organizations; (6) third party administrators; and (7) prescription benefit management companies authorized to administer, offer, or provide health benefit plans.
Arkansas Code Annotated § 23–99–203(f) (Michie Supp.1995).

2. A health care provider is defined by the statute to be limited to (1) physicians and surgeons (M.D. and D.O.); (2) podiatrists; (3) chiropractors; (4) physical therapists; (5) speech pathologists; (6) audiologists; (7) dentists; (8) optometrists; (9) hospitals; (10) hospital-based services; (11) psychologists; (12) licensed professional counselors; (13) respiratory therapists; (14) pharmacists; (15) occupational therapists; (16) long-term care facilities; (17) home health care; (18) hospice care; (19) licensed ambulatory surgery centers; (20) licensed certified social workers; (21) licensed psychological examiners; (22) licensed psychological examiners; (23) advanced practice nurses; (24) licensed dieticians; (25) community mental health centers or clinics; (26) certified orthotists; and (27) prosthetists.
Ark.Code Ann. § 23–99–203(d).

3. Specifically, § 203–99–204 provides that:
(a) A health care insurer shall not, directly or indirectly:
(1)(A) Impose a monetary advantage or penalty under a health benefit plan that would affect a beneficiary's choice among those health care providers who participate in the health benefit plan according to the terms offered.
(B) "Monetary advantage or penalty" includes:
(I) A higher copayment;
(ii) A reduction in reimbursement for services; or
(iii) Promotion of one (1) health care provider over another by these methods;
(2) Impose upon a beneficiary of health care services under a health benefit plan any copayment, fee, or condition that is not equally imposed upon all beneficiaries in the same benefit category, class, or copayment level under that health benefit plan when the beneficiary is receiving services from a participating health care provider pursuant to that health benefit plan; or
(3) Prohibit or limit a health care provider that is qualified under § 23–99–203(d) and is willing to accept the health benefit plan's operating terms and conditions, schedule of fees, covered expenses, and utilization regulations and quality standards, from the opportunity to participate in that plan.
(b) Nothing in this subchapter shall prevent a health benefit plan from instituting measures designed to maintain quality and to control costs, including, but not limited to, the utilization of a gatekeeper system, as long as such measures are imposed equally on all providers in the same class.
Ark.Code Ann. § 23–99–204.

Defendants seek to compel plaintiffs' compliance with the "Any Willing Provider" clause; however, plaintiffs contend that they should not be required to comply because the PPA relates to ERISA employee benefit plans and is preempted by ERISA. Defendants, in response, deny that the PPA relates to ERISA plans and, furthermore, contend that it is a law regulating insurance which is exempt from preemption by ERISA.[4]

### IV. ERISA Preemption

At issue is the scope of ERISA, 29 U.S.C. § 1001, et seq. ERISA regulates "employee benefit plans", which include both pension benefit plans and welfare benefit plans. Pension plans provide retirement income to employees. 29 U.S.C. § 1002(2). Welfare plans provide "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability or death." 29 U.S.C. § 1002(1). This case involves only welfare plans.

■ ERISA contains a preemption provision which states that ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan ..." 29 U.S.C. § 1144(a).

In order for ERISA to preempt a state law, the state law must "relate to" an ERISA plan. A law is held to "relate to" an employee benefit plan if it has a "connection with" or "reference to" such a plan. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). ERISA preemption applies not only to state laws which are directed toward employee benefit plans, or which cover subject areas addressed by ERISA but also to laws or regulations which directly or indirectly relate to ERISA plans. Ingersoll–Rand Co. v. McClendon, 498 U.S. 133, 138–139, 111 S.Ct. 478, 482–483, 112 L.Ed.2d 474(1990).

Although the preemptive scope of ERISA is deliberately expansive, it has its limits. The Supreme Court has ruled that some state actions may affect employee benefit plans in a manner too tenuous, remote or

peripheral to warrant a finding that the law "relates to" the plan. Shaw, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Since ERISA's text contains no specific reference to "Any Willing Provider" statutes such as the PPA, it becomes necessary to look to the intent of Congress when it enacted ERISA.

"[T]he basic thrust of the pre-emption clause was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 657, 115 S.Ct. 1671, 1677–1678, 131 L.Ed.2d 695, 706 (1995). Therefore, ERISA will preempt state laws which mandate employee benefit structures or their administration as well as any state laws which provide alternate enforcement mechanisms. Id. at 657, 115 S.Ct. at 1678.

In Travelers, the Supreme Court stated it has "never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of preemption with the starting presumption that Congress does not intend to supplant state law." Id. at 654, 115 S.Ct. at 1676.

In determining whether the PPA "relates to" an employee benefit plan within the meaning of ERISA, the Court must examine the two prongs of "reference to" and "connection with" an ERISA plan.

### A. "Reference to" Analysis

■ In the first prong of the analysis, the state statute is preempted if it makes an explicit reference to ERISA plans. The Supreme Court has ruled that "reference to" is a term of art not to be applied with "uncritical literalism." Id. at 656, 115 S.Ct. at 1677. One test is whether the law is one of "general application", or whether it "singles out ERISA ... plans for different treatment." Boyle v. Anderson, 68 F.3d 1093, 1101 (8th Cir.1995) (quoting Mackey v. Lanier Collection Agency & Serv., 486 U.S. 825, 830, 108 S.Ct. 2182, 2186, 100 L.Ed.2d 836 (1988)). Any law which singles out ERISA plans is a

---

4. Intervenor State of Arkansas' motion states that its request for summary judgment is the same as defendants and adopts the defendants' motion and supporting brief. Therefore, the State of Arkansas' arguments are included whenever the defendants' arguments are set forth.

law that makes a "reference to" ERISA plans. *Id.*

The Supreme Court expressly ruled in *Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) that preemption is required even where the state statute tries to exempt ERISA plans from the burdens of the law, i.e., where a privilege as opposed to an obligation, is extended by express reference. *Mackey*, 486 U.S. at 829, 108 S.Ct. at 2185.

Plaintiffs contend the following language in the PPA is an explicit reference to an ERISA plan and meets the *Mackey* test for preemption: "The provisions of this subchapter shall not apply to self-funded or other health benefit plans that are exempt from state regulation by virtue of the federal Employee Retirement Income Security Act of 1974, as amended." Ark.Code Ann. § 23–99–209.

Plaintiffs also contend that § 23–99–206 makes reference to ERISA plans when it refers to any other person or entity. Arkansas Code Annotated § 23–99–206 states: "It is a violation of this subchapter for any health care insurer or other person or entity to provide any health benefit plan providing for health care services that does not conform to this subchapter." Section 23–99–206 purports to cover non–ERISA plans and ERISA plans, and targets ERISA plans specifically.

Defendants claim the language in § 23–99–209 is nothing more than a restatement of ERISA's deemer clause which applies to "any law of any state purporting to regulate insurance companies or insurance contracts". 29 U.S.C. § 1144(b)(2)(B).

Defendants also argue that the PPA does not "single out" ERISA health benefit plans because the law does not apply to "health benefit plans" but only applies directly to "health care insurers". This argument is inconsistent with the language of the PPA which defines health benefit plans as "any entity or program that provides reimbursement, including capitation, for health care services ..." Ark.Code Ann. § 23–99–203(c).

The statute fails to make clear the distinction argued by the defendants between "health care plans" and "health care insur-

ers." Except for the exemptions in § 23–99–209, ERISA plans, just as any other entity or program providing reimbursement for health care services, would be required to comply with the PPA.

Mindful of the admonition of the Supreme Court not to apply this test with uncritical literalism, this Court is of the opinion that the PPA contains a "reference to" ERISA plans by singling out plans for special treatment, which in this case is an exemption from burdens of the statute. In reaching this conclusion, the Court is relying on the authority of *Mackey* and not the ruling in *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) (mere mention of ERISA statute enough to invoke preemption).

### B. Connection with Analysis

 The second prong of the analysis is to determine if the PPA has a "connection with" ERISA plans. *Boyle*, 68 F.3d at 1101. In *Arkansas Blue Cross & Blue Shield v. St. Mary's Hospital, Inc.*, 947 F.2d 1341 (8th Cir.1991), *cert. denied*, 504 U.S. 957, 112 S.Ct. 2305, 119 L.Ed.2d 227 (1992), ("Arkansas BCBS"), the Eighth Circuit identified seven factors that are used to determine whether a state law has a "connection with" ERISA plans: (1) whether the state law negates an ERISA plan provision; (2) whether the state law affects relations between primary ERISA entities; (3) whether the state law impacts the structure of ERISA plans; (4) whether the state law impacts the administration of ERISA plans; (5) whether the state law has an economic impact on ERISA plans; (6) whether preemption of the state law is consistent with other ERISA provisions; and (7) whether the state law is an exercise of traditional state power. *Arkansas BCBS*, 947 F.2d at 1344–45. *See also Minnesota Chapter of Associated Builders & Contractors v. Minnesota Dept. of Labor & Ind.*, 47 F.3d 975, 978 (8th Cir.1995).

In *Bannister v. Sorenson*, 103 F.3d 632 (8th Cir.1996), the Eighth Circuit endorsed the application of the *Arkansas BCBS* factors, stating: "Nonetheless, we believe that *Arkansas Blue Cross & Blue Shield* sets forth an analytical structure for ERISA pre-

emption claims that facilitates reasoned decision-making and appellate review, and is applicable in both the common law and statutory environment." *Bannister* at 636.

Courts must look upon the "totality of the state statute's impact on the plan, and no one factor is determinative of the ERISA preemption issue." *Boyle*, 68 F.3d at 1101–02.

*Whether State Statute Negates an ERISA Plan Provision*

■ The *Arkansas BCBS* factors first focus upon a determination of whether the PPA negates a plan provision.

Plaintiffs contend there are at least three significant ways in which the PPA negates plan provisions, essentially changing the terms and conditions of the plans: (1) by negating the plans' assignment restriction provisions and removing their discretion over direct payments to providers; (2) by nullifying numerous plan references designed to implement and take advantage of the limited panel networks chosen by the plans as their preferred benefit structure; and (3) effectively eliminating the "gatekeeper" function of the plans by enabling the plan beneficiary to bypass the gatekeeper and choose any health care provider willing and qualified to provide services.

Defendants contend the only thing the PPA negates is the ability of the health care insurers to arbitrarily exclude providers through "network need." Defendants argue the "network need" is not a plan provision but a management tool of health care insurers and that any impact on the plan would be indirect and insignificant.

In *Arkansas BCBS*, the Circuit Court examined the effect of an Arkansas general assignment statute upon the assignment restrictions in Blue Cross–insured ERISA plans. These ERISA plans contained a provision which stated: "No assignment of benefits under this Certificate shall be valid until approved and accepted by the Plan. The Plan reserves the right to make payment of benefits, in its sole discretion, directly to the provider of service or to you." *Arkansas BCBS*, 947 F.2d at 1343.

The Eighth Circuit ruled that this general assignment statute "related to" ERISA plans

so as to be preempted. One factor considered important, but not outcome determinative, to the Court, was the assignment statute's negation of the assignment restrictions of Blue Cross–insured ERISA plans. *Arkansas BCBS*, 947 F.2d at 1346.

The same language as that involved in *Arkansas BCBS* appears in HMO Partners' ERISA plans and is used to restrict assignment of benefits to health care providers who do not have a participation agreement with HMO Partners.

These restrictions of HMO Partners' ERISA plans are negated by the PPA in that the PPA's "Any Willing Provider" clause prevents the plan administrator from differentiating between providers in the direct payment of benefit claims. Under the PPA, the choice of whether a given provider will be a participating or nonparticipating provider is taken from the plan and given to the individual provider.

Section 23–99–207 of the PPA provides an extra remedy not included in employee benefit plans. Section 207 reads: "Any person adversely affected by a violation of this subchapter may sue for injunctive relief, and upon prevailing, in addition to such relief may recover damages of not less than one thousand dollars, attorney's fees and costs." Ark.Code Ann. § 23–99–207 (Michie Supp. 1995).

This subchapter affords a civil remedy to any provider or plan beneficiary adversely affected by noncompliance with the PPA which has a direct effect in contravention of the exclusive remedies under ERISA.

ERISA preempts state law on the issue of assignability of benefits because material provisions in the employee benefit plans covered by ERISA would be directly affected if the PPA were to be interpreted as prohibiting restrictions or assignment. *See St. Francis Regional Med. Ctr. v. Blue Cross & Blue Shield of Kan.*, 49 F.3d 1460 (10th Cir.1995) (citing *Arkansas BCBS*, 947 F.2d at 1349–50).

Plaintiffs contend the plan provisions are negated by the PPA by the effective elimination of the "gatekeeper function". Defen-

dants conceded in oral argument that if the gatekeeper function is eliminated, there would be a negation of a plan provision but contend that § 23–99–204(b) of the PPA preserves the gatekeeper as part of any health benefit plan.

Ark.Code Ann. § 23–99–204(b) provides: "Nothing in this subchapter shall prevent a health benefit plan from instituting measures designed to maintain quality and to control costs, including but not limited to utilization of gatekeeper systems as long as such measures are imposed equally on all providers in the same class."

Plaintiffs argue that this language is a nullity when read in conjunction with subparts (a)(1) and (2) of the same subchapter of the statute. These sections of Ark.Code Ann. § 23–99–204 state in pertinent part:

(a) A health care insurer shall not, directly or indirectly:

(1)(A) Impose a monetary advantage or penalty under a health benefit plan that would affect a beneficiary's choice among those health care providers who participate in the health benefit plan ... "Monetary advantage or penalty" includes (I) A higher copayment; (ii) A reduction in reimbursement for services; or (iii) Promotion of one (1) health care provider over another by these methods;

(2) Impose upon a beneficiary of health care services under a health benefit plan any copayment, fee, or condition that is not equally imposed upon all beneficiaries in the same benefit category, class, or copayment level under that health benefit plan when the beneficiary is receiving services from a participating health care provider pursuant to that health benefit plan.

Ark.Code Ann. § 23–99–204(a)(1) and (2).

The Court agrees with the plaintiffs that a reading of this section of the statute, as a whole, has the effect of taking away the gatekeeper function from the provider designated by the plan fiduciary and placing it in the control of the plan beneficiary. If the effect of the statute is to permit a plan beneficiary who does not go through the gatekeeper to obtain the same benefits as the

beneficiary who does, any advantage that the gatekeeper function affords the plan is eliminated.

The gatekeeper function and limited provider panels are undeniably significant features of ERISA plans and their negation by the PPA favors a finding of preemption.

*Effect on Primary ERISA Entities and Impact on Plan Structure.*

■ The second and third factors of effect on primary ERISA entities and impact on plan structure were treated identically by the courts in both *Arkansas BCBS* and *Boyle,* and will be treated the same in this analysis.

■ Courts are more likely to find that a state law relates to a benefit plan if it affects relations between one of these entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—than if it affects relations between one of these entities as an outside party, or between two outside parties with only an incidental effect on the plan. *See Memorial Hosp. System v. Northbrook Life Ins. Co.,* 904 F.2d 236, 249 (5th Cir.1990).

Plaintiffs contend the PPA completely nullifies the plan structure which utilizes the limited provider networks and that such features are essential to the success of an ERISA health benefit plan. Defendants argue that limited provider networks do not concern plans but rather only health care insurers and any pass-through to the plans would be insignificant.

Defendants rely on *In Home Health, Inc. v. The Prudential Ins. Co. of America,* 101 F.3d 600 (8th Cir.1996), as authority for the distinction made by the Circuit Court between insurers and insurance plans. The *Home Health* case involved a claim by In Home Health for negligent misrepresentation under Missouri law against an ERISA plan administrator, Prudential. In Home Health alleged that Prudential provided incorrect information as to the amount of benefits paid a plan beneficiary, which resulted in an overpayment to the beneficiary. *Id.* at 602.

The issue in *Home Health* was, thus, whether ERISA preempts state tort claims by a third party provider who sues the administrator of a ERISA plan, suing not as an

assignee of a ERISA beneficiary but as an independent entity claiming damages. The Court followed the majority view that provides state law claims of this type are not preempted by ERISA.

The Court utilized the *Arkansas BCBS* factors in making the preemption analysis and concluded that the nature of the claim was such as not to produce an impact on the employee benefit plan itself, but rather solely on the administrator of the plan. *Id.* at 606.

The issue in *Home Health* is distinguishable from the issues before this Court, and, therefore, not inconsistent with a ruling in the instant case that the PPA is preempted by ERISA.

This Court is persuaded by the reasoning of the District Court in *Stuart Circle Hosp. Corp. v. Aetna Health Management*, 800 F.Supp. 328 (E.D.Va.1992), *vacated*, 995 F.2d 500 (4th Cir.1993) which held that the Virginia "All Willing Provider" statute "related to" ERISA plans for preemption purposes. There, the District Court stated:

> Section 38.2–3407 goes to the sum and substance of employee benefit plans: the delivery of promised benefits ... Preferred provider arrangements, the target of the statute, are creatures of employee benefit plans. They are the principal means by which employee benefit plans deliver their promised medical benefits; as such, regulation of the structure of the PPO network necessarily affects the benefit plans and thus relates to them.

800 F.Supp. at 332 (upheld on "All Willing Provider" statute being "related to" ERISA for preemption purposes; vacated on issue of whether ERISA's insurance savings clause applied). *See also CIGNA Healthplan of Louisiana v. State of Louisiana*, 82 F.3d 642 (5th Cir.1996); *Blue Cross & Blue Shield of Alabama v. Peacock's Apothecary, Inc.*, 567 F.Supp. 1258 (N.D.Ala.1983).

The Supreme Court, in *Travelers*, emphasized that where there is either direct or indirect impact on ERISA plans' structure, content, and administration, such regulation implicates the very core of ERISA preemption. *Travelers*, 514 U.S. at 668, 115 S.Ct. at 1683.

This Court holds that the virtual elimination of the limited provider network has a direct impact on the structure, content and administration of health benefit plans which triggers the preemptive provisions of ERISA.

*Impact on Plan Administration*

■ An analysis of this factor requires examination of intrastate and interstate impact on the administration of ERISA plans. *Boyle*, 68 F.3d at 1104. Plaintiffs contend the PPA directly and significantly affects the administration of plans by shifting control of the decision to deliver benefits by means of a controlled and limited panel of preferred providers to the providers themselves. Plaintiffs argue that the PPA extends beyond insurers or third party administration to include "any health benefit plan providing for health care services to residents of this state ...", including ERISA plans themselves. Ark.Code Ann. § 23–99–206.

Relying on *Travelers*, 514 U.S. at 657, 115 S.Ct. at 1678, defendants claim that preemption only occurs when a state law mandates employee benefit structures or their administration. Defendants argue that the burden must be both binding, i.e., leaving plan administrators with no choice or shifting control of the plan, and substantive, i.e., affecting benefits. They argue that such a burden is absent in this case.

Plaintiffs, however, cite numerous administrative burdens as a result of the PPA, the most significant of which are to deny plan administrators the ability to deliver benefits through a limited network of providers and the elimination of the gatekeeper. In the Court's opinion, this burden is sufficient enough to favor preemption.

■ When a state law has an interstate administrative impact on ERISA plans because multi-state plans would be subject to potentially conflicting laws of 50 states, this factor favors preemption. *Arkansas BCBS*, 947 F.2d at 1348. Moreover, the Supreme Court stresses that a main purpose of ERISA is the protection of plan participants from the threat of inconsistent state regulation. *Travelers*, 514 U.S. at 657, 115 S.Ct. at 1677.

Plaintiffs refer to the study of "Any Willing Provider" laws compiled by the Group Health Association of America which indicates actual and existing conflicts in numerous widely varying state laws. *See Health Association of America, Survey, Any Willing Provider Laws,* July 1, 1994, at 1–5. This alone is sufficient to favor preemption as to this factor.

*Economic Impact*

**[10]** The existence or non-existence of economic impact on a ERISA plan is not dispositive of the preemption issue but is still a relevant factor to consider.

Based on the Supreme Court's holding in *Travelers,* the law on this issue is clear. A mere economic impact on ERISA plans, at least when indirect, is not of itself sufficient to support ERISA preemption of state laws unless it becomes "acute". *Travelers,* 514 U.S. at 668, 115 S.Ct. at 1683.

Defendants' proof and arguments are more persuasive on this issue, and the Court is of the opinion that there is not sufficient evidence of a direct or acute indirect economic impact to warrant preemption.

*Is State Law Consistent With Other ERISA Provisions*

**[11]** Plaintiff, HMO Partners, points to several inconsistencies which exist between the PPA's requirements for plan benefit design and administration, and ERISA's similar requirements. These include:

> The federal statute provides that Plan documents shall identify "one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). The statute further directs that ERISA Plans shall "provide a procedure for establishing and carrying out a funding policy and method ...," "describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan," "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan," and "specify the basis on which payments

are made to and from the plan." 29 U.S.C. § 1102(b). ERISA also provides that Plan fiduciaries shall discharge their duties for the exclusive purpose of "providing benefits to participants and their beneficiaries," and "in accordance with the documents and instruments governing the plan...." 29 U.S.C. § 1104(a).

> Brief for separate plaintiff HMO Partners at 37, *The Prudential Insurance Co. v. National Park Medical Center,* (W.D. Ark 1995) (No. LR–C–95–514). These inconsistencies are not refuted by defendants in their brief.

While the proof on this factor is not particularly significant in the overall analysis, it does favor preemption.

*Exercise of Traditional State Power*

The Eighth Circuit, in *Boyle,* gave proper recognition to the mandate of the Supreme Court that "the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress". *Boyle,* 68 F.3d at 1099 (citing *Travelers,* 514 U.S. at 655, 115 S.Ct. at 1676). This Court recognizes that the State of Arkansas has a legitimate interest in regulating health care for its citizens, and an analysis of this factor does not favor preemption.

*Overall Arkansas BCBS Result*

After giving due consideration to all of the *Arkansas BCBS* factors, this Court finds that the PPA "relates to" ERISA plans by virtue of making a reference to and having a connection with ERISA plans. Therefore, the Court holds that the PPA is preempted by ERISA.

**V. *The "Saving Clause"***

Having found that the PPA "relates to" ERISA plans such that it is preempted, it is now necessary to consider whether the PPA falls within ERISA's "saving clause," 29 U.S.C. § 1144(b)(2)(A).[5] This provision, therefore, exempts from preemption those laws regulating insurance, banking, or securities. Defendants contend the PPA is exempt

---

**5.** "[N]othing in this Subchapter shall be construed to exempt or relieve any person from any law of any state which regulates insurance ..." 29 U.S.C. § 1144(b)(2)(A).

from preemption because it is a law which regulates the business of insurance.

The United States Supreme Court has explained the relationship between the preemption clause and the saving clause as follows: "If a state law relates to ... employee benefit plan[s]', it is preempted.... The saving clause excepts from the preemption clause laws that 'regulate insurance.' § 514(b)(2)(A)." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39, (1987).

 The District Court in *Blue Cross & Blue Shield of Alabama v. Nielsen,* 917 F.Supp. 1532 (N.D.Ala.1996), outlined the relevant test for determining whether a state law regulates insurance as follows:

The United States Supreme Court adopted a two-step analysis of the saving clause in *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). The Court subsequently affirmed the *Metropolitan Life* analysis in *Pilot Life,* but "with a clear intent to create a narrower scope for the saving clause in light of the broad sweep of the preemption provision." *Smith v. Jefferson Pilot Life Ins. Co.,* 14 F.3d 562, 569 (11th Cir.1994), *cert. denied,* 513 U.S. 808, 115 S.Ct. 57, 130 L.Ed.2d 15 (1994). The first step is to determine whether under a "common-sense view" the state law regulates insurance. *Pilot Life,* 481 U.S. at 48, 107 S.Ct. at 1553. Second, the state law must regulate the "business of insurance" as than term is defined under the McCarran–Ferguson Act. *Id.* A state law must satisfy both steps in the analysis to be saved from preemption. *Anschultz v. Connecticut Gen. Life Ins. Co.,* 850 F.2d 1467, 1468 (11th Cir.1988).

*Id.* at 1538.

*The Common–Sense Test.*

 The "common-sense" test requires that "in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." *Id.* (quoting *Pilot Life,* 481 U.S. at 50, 107 S.Ct. at 1554.)

A common sense analysis of the PPA indicates that, while by its terms it affects the insurance industry, it is not directed specifically toward the insurance industry.

The declared legislative purpose of the PPA belies any intent to regulate insurance:

The General Assembly finds that patients should be given the opportunity to see the health care provider of their choice. In order to assure the citizens of the state of Arkansas the right to choose the provider of their choice, it is the intent of the General Assembly to provide the opportunity of providers to participate in health benefit plans.

Ark.Code Ann. § 23–99–202. The definition of "health benefit plans" does not include any reference to insurance or the insurance industry but rather includes "any entity or program that provides reimbursement, including capitation, for health care services...." Ark.Code Ann. § 23–99–203(c).

The PPA is not limited to the insurance industry but extends to entities outside the insurance industry such as employers and administrators of self-insured plans. Its scope is broader than regulation of the insurance industry.

*The McCarran–Ferguson Criteria.*

 The three criteria to be considered under the McCarran–Ferguson "business of insurance test" are: (1) does the practice effect a transfer or spreading of policyholder's risk; (2) is the practice an integral part of the relationship between insurer and insured; and (3) is the practice limited to entities within the insurance industry. *Nielsen,* 917 F.Supp. at 1539 (citing *Pilot Life,* 481 U.S. at 48–49, 107 S.Ct. at 1553).

The Fifth Circuit in *Tingle v. Pacific Mut. Ins. Co.,* 996 F.2d 105, 110 (5th Cir.1993), noted that the Sixth, Eighth, Tenth and Eleventh Circuits have all held that a statute's failure to satisfy one or more of the *Metropolitan Life* and McCarran–Ferguson factors excludes it from the ERISA insurance saving clause.

*The transfer of a policyholder's risk.*

 Here, the activity addressed by the statute is exclusive participation agreements between providers of health care services

and any entity or program providing reimbursement for such services, "including but not limited to insurance companies...." Ark.Code Ann. § 23–99–203(f). The PPA declares that such exclusive arrangements shall be void and that "Any Willing Provider" must be allowed to participate on equal terms with any other provider. *See* Ark. Code Ann. § 23–99–204(a)(3).

This Court believes this issue is controlled by the ruling of the United States Supreme Court in *Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). In *Royal Drug,* the Court held that agreements negotiated between Blue Shield of Texas and pharmacies did not constitute the "business of insurance." *Id.* In so holding, the Court distinguished between the business of insurance *companies* and the business of *insurance,* such as the underwriting of insurance risks. *Id.* at 214 n. 9, 99 S.Ct. at 1074 n. 9. The Court summarized its holding by stating that "[i]t is next to impossible to assume that Congress could have thought that agreements (even by insurance companies) which provide for the purchase of goods and services from third parties at a set price are within the meaning of [the] phrase '[business of insurance']". *Id.* at 230, 99 S.Ct. at 1082.

This ruling has also been extended to a Georgia statute regulating participation agreements between ERISA plan administrators and participating pharmacies. *See General Motors Corp. v. Caldwell,* 647 F.Supp. 585 (N.D.Ga.1986). The District Court in that case determined that the statute "relates to" ERISA plans and is not saved from preemption, as a law regulating the "business of insurance." *Id.* at 590.

The Arkansas PPA statute, in attempting to bar exclusive provider agreements and closed-panel PPOs or HMO networks, does not regulate the "business of insurance" by effecting the "transferring or spreading of a policyholder's risk."

*The relationship between insurer and insured.*

■ The second McCarran–Ferguson criterion requires that the PPA define the terms of "the policy relationship between the insurer and the insured." In the initial case,

the PPA is aimed at exclusive contracts, arrangements and networks, all of which involve agreements between or among medical services providers and third parties, such as insurers, physicians, hospital organizations, third party administrators and others. The statute contains restrictions and requirements applicable to the relationships between and among health care providers and other third party entities, including various forms of provider networks.

These contracts and provider networks are related to the insurance contract between insurers and their insureds but are not an integral part of the policy relationship between the insurer and the insured. *Cf. Pilot Life,* 481 U.S. at 51, 107 S.Ct. at 1555 (common law of bad faith found not to be integral to insurer-insured relationship). The Supreme Court noted in *Royal Drug,* the pharmacy participation agreements did not involve any underwriting or spreading of the risk between insurer and insured. *Royal Drug,* 440 U.S. at 214, 99 S.Ct. at 1075. Likewise, the provider participation agreements in the instant case, are not between insurer and insured. They are separate contractual arrangements between Prudential and health care providers engaged in the sale and distribution of goods and services other than insurance. *See Royal Drug,* 440 U.S. at 214–16, 99 S.Ct. at 1075–76. The PPA, thus, fails the second criterion of the McCarran–Ferguson analysis.

*Limited to entities within the insurance industry.*

■ The third criterion is whether the PPA is limited solely to entities within the insurance industry. *Pilot Life,* 481 U.S. at 49, 107 S.Ct. at 1553–54. If the PPA reaches beyond insurance to other entities, it fails this factor of the analysis.

Here, the PPA specifically describes by name numerous non-insurer entities to which its prohibitions and requirements shall apply. In addition to insurance companies, the PPA specifically mentions hospital and medical services corporations, health maintenance organizations, preferred provider organizations, physician hospital organizations, third party administrators, and prescription benefit man-

agement companies as covered by the statute. *See* Ark.Code Ann. § 23–99–203(f). It, thus, fails to satisfy the third criterion of the McCarran–Ferguson test.

The defendants' argument that *U.S. Dept. of Treasury v. Fabe,* 508 U.S. 491, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993), replaces the test for "business of insurance" as prescribed in *Pilot Life* is not persuasive. The *Fabe* case did not involve ERISA or anything analogous to the provider participation agreements at issue in *Royal Drug. Fabe* does not address the ERISA saving clause or the ERISA-specific analysis of the "business of insurance" as outlined in *Pilot Life.*

In summary, the Arkansas PPA fails to meet any of the three criteria for a statute regulating the "business of insurance," and is, therefore, not exempt from preemption under the saving clause.

## VI. *Federal HMO Act*

The defendants' motion for summary judgment, separate plaintiff HMO Partners, and plaintiffs' reply to defendants' motion for summary judgment raise the issue of whether the "All Willing Provider" portion of the PPA is preempted by 42 U.S.C. § 300e–10(a) as to federally qualified HMOs. The ruling that ERISA preempts the PPA renders this argument moot Nonetheless, the Court notes that 42 U.S.C. § 300e–10 states, in pertinent part:

> In the case of any entity—
>
> (1) which *cannot do business as a health maintenance organization* in a State in which it proposes to furnish basic and supplemental health services because that State by law, regulation or otherwise—
>
> \* \* \* \* \* \*
>
> © requires that all physicians or a percentage of physicians in the locale participate or be permitted to participate in the provision of Services of the entity, . . . and
>
> \* \* \* \* \* \*
>
> (2) which is a qualified health maintenance organization for the purposes of § 300e–9 of this title (relating to employees' health benefit plans) such requirements shall not apply to that entity so as to prevent it from operating as a health maintenance organization in accordance with § 300e of this title.

42 U.S.C. § 300e–10 (emphasis supplied).

Defendants admit the Federal HMO Act specifically references state laws requiring all physicians or a percentage of physicians to participate but contend that such requirements are only preempted to the extent that the provisions of the state law mean that an "HMO" cannot do business as a health maintenance organization within the state.

With this dispute as to the meaning of the statute, the legislative intent gleaned from the House and Senate reports is instructive. The Senate report of the federal HMO Act makes it plain that the preemption provision of than Act was designed to prevent the type of interference in HMO operations which the PPA would establish.

Based on the above, the federal HMO Act would preempt the Arkansas PPA insofar as it attempts to affect federally qualified HMOs.

## VII. *FEHBA and § 1983*

The remaining issues of whether the PPA is preempted by the FEHBA, and whether separate plaintiffs, HMO Partners and Prudential HMO's federal rights have been denied in violation of 42 U.S.C. § 1983 are rendered moot by the Court's ruling that ERISA preempts the PPA.

## VIII. *Conclusion*

Plaintiffs' Motion for Summary Judgment (Doc. # 52) is hereby granted. The Court holds that the Arkansas Patient Protection Act of 1995, A.C.A. § 23–99–201, *et seq.,* is preempted by ERISA "insofar as [it] . . . relate[s] to any employee benefit plan described in section 1003(a). . . ." *See* 29 U.S.C. § 1144(a). Defendants' are hereby permanently enjoined from enforcing the PPA "insofar as [it] . . . relate[s] to any

employee benefit plan described in section 1003(a)...." *See* 29 U.S.C. § 1144(a).

IT IS SO ORDERED.