# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-2779
No. 98-1023

_____

| | | |
|---|---|---|
| Gloria Molasky; | * | |
| Melanjo Investments, Inc., | * | |
| | * | |
| Appellants, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Principal Mutual Life Insurance | * | |
| Company, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: February 11, 1998

Filed: July 23, 1998

_____

Before WOLLMAN and LOKEN, Circuit Judges, and BOGUE,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

In No. 97-2779, Gloria Molasky and Melanjo Investments, Inc. (Melanjo) appeal from the district court's order dismissing their action against Principal Mutual Life Insurance Company (Principal). In No. 98-1023, they appeal from the order awarding

_____

[1]The HONORABLE ANDREW W. BOGUE, United States District Judge for the District of South Dakota, sitting by designation.

Principal $40,868.67 in attorney fees and costs. We affirm the order dismissing the action. We reverse the order awarding attorney fees and costs and remand for further proceedings.

## I.

Melanjo is a Florida corporation, having its principal office in St. Louis, Missouri. Melanjo, wholly owned by the Molasky family, is engaged in the business of real estate and investments. In early 1982, Melanjo was contacted by Ben Smith, Jr., an independent insurance broker, who supplied it with a master application and individual application forms for group life insurance coverage with Principal.[2]

In addition to requiring that a Melanjo employee be a full-time employee to be eligible for life insurance, the group policy also included the following conditions:

> The term "Person" means any individual who is a full-time employee of [Melanjo].
>
> The term "full-time employee" means an employee whose employment with [Melanjo] constitutes his principle occupation and who is regularly scheduled to work at such occupation not less than thirty hours per week.
>
> The terms "active work" and "actively at work," as used in this Policy with respect to any Person, mean active full-time performance of all customary duties of his occupation at [Melanjo's] business establishment or other location of business to which [Melanjo's] business requires the Person to travel.

---

[2]Although Smith was originally named as a defendant, the appellants later dismissed him from the action.

Melanjo's bookkeeper, Rosemary Pace, filled out the individual forms for its proposed covered employees, including Allan and Gloria Molasky and their son, Mark. At the time of the application, Mark Molasky was serving a thirty-two-year sentence in the Missouri state prison system. Allan Molasky filled out a portion of his son's application, listing the Molasky home as Mark's address rather than his prison address. Mark signed the individual application, listing his job position as "adviser." This application contained a box stating "Do you work at least 30 hours per week at your place of employment?" In response to this inquiry, the "No" box was marked. Allan Molasky also signed the master application, representing that all of his employees were working at least thirty hours per week. Citing a lack of medical documentation, Principal ultimately denied the proposed coverage on November 2, 1982.

In early 1983, Melanjo reapplied for coverage and submitted a new set of application forms. A Principal employee typed new applications for each purported employee, using information from the previous year's applications, thereafter relying on the individual who was required to sign the document to confirm that the information contained therein was correct. Melanjo and its claimed employees then completed both the master and individual applications. Once again, the master application reflected that all of Melanjo's employees worked at least thirty hours per week. Moreover, Mark Molasky's application again listed his position as "Adviser" and indicated "No" in response to the question whether or not he worked at least thirty hours at his place of employment.

It was Principal's practice to submit group life insurance applications to a department known as Group Underwriting C for review and approval. The documentation would then be forwarded to other departments within Principal, including Contracts Administration, for evaluation. Melanjo's application was approved by Underwriting C on May 2, 1983, and then forwarded to the Contracts Administration department. Later that same month, Principal sought clarification of Mark Molasky's application, specifically citing his aforementioned "No" response. As

a result of this inquiry, the application was amended by Principal employees to change Mark's answer to "Yes." The district court found that Principal made this change only after confirming it with either Melanjo or its insurance agent.

Mark Molasky died in prison on January 29, 1990. Melanjo filed a claim for the $50,000 death benefit provided by the policy, listing Gloria Molasky as the beneficiary. Principal denied the claim, asserting that because Mark was not a person actively at work and not a full-time employee, he was ineligible for insurance. Gloria Molasky and Melanjo then filed suit against Principal, alleging breach of fiduciary duty, breach of contract, and misrepresentation. (They later voluntarily dismissed the misrepresentation claim.) By agreement, the parties submitted the case on the basis of written pleadings, depositions, and documentary evidence. Concluding that Principal had not acted in a fiduciary capacity, the district court dismissed the action.

## II.

The appellants seek recovery from Principal on both breach of contract and breach of fiduciary duty theories. Melanjo's plan, which included, in part, the death benefit funded by the group life insurance purchased from Principal, is governed by the Employee Retirement Income Security Act (ERISA). 29 U.S.C. §§ 1001 et seq. The appellants' state law claim for breach of contract is preempted by ERISA. See Walker v. National City Bank of Minneapolis, 18 F.3d 630, 634 (8th Cir. 1994) (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987)). Thus, in order to prevail, appellants must establish that Principal acted in a fiduciary capacity and that it breached a fiduciary duty owed to the appellants.

Under ERISA, the written plan instrument "should identify 'one or more named fiduciaries.'" Kerns v. Benefit Trust Life Ins. Co., 992 F.2d 214, 216 (8th Cir. 1993) (quoting 29 U.S.C. § 1102(a)(1)). Because Melanjo had no written plan and no named fiduciary, the appellants must demonstrate that Principal was a fiduciary under 29

U.S.C. § 1002(21)(A). See Kerns, 992 F.2d at 216. Section 1002(21)(A) provides that any other person

>is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or . . . disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). We held in Kerns that this definition does not encompass insurance companies when they are engaged in the performance of their normal contractual claims-handling responsibilities under the terms of a group policy. See id., 992 F.2d at 216-17.

Department of Labor regulations mandate that every plan permit a claimant to appeal a denied claim "to an appropriate named fiduciary or to a person designated by such fiduciary." 29 C.F.R. § 2560.503-1(g)(1). Often, as in this case, insurance is purchased to fund an employer's ERISA plan. When an insurer retains this review function, it "shall be the 'appropriate named fiduciary' for purposes of this section." Id. at § 2560.503(g)(2); see also The Prudential Ins. Co. of America v. Doe, 140 F.3d 785, 789-90 (8th Cir. 1998); Kerns, 992 F.2d at 216. Principal supplied Melanjo with a pamphlet entitled "Your Group Insurance Benefits" as an aid to Melanjo's administration of its plan. The pamphlet includes a provision that gives claimants the right to seek Principal's reconsideration of denied claims. Arguably, then, Principal acted in a fiduciary capacity with respect to the claims-review function in this case.

That does not end the matter, however, for fiduciary status is not "an all-or-nothing concept. . . . A court must ask whether a person is a fiduciary with respect to the particular activity in question." Kerns, 992 F.2d at 217 (quoting Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992)). Because the appellants' claims relate to Principal's alleged unilateral amendment of Mark Molasky's

application, we must determine whether Principal was acting in a fiduciary capacity when it made the change. Because Melanjo had no written employee benefit plan, the company by law became the plan administrator. See 29 U.S.C. § 1002(16)(A)(ii). It is well established that insurers who, like Principal in this case, are not plan administrators have "no ERISA fiduciary duty to notify plan participants and beneficiaries, unless the policy documents or the insurer's past practices have created an obligation to communicate directly with them." Kerns, 992 F.2d at 217. The appellants concede that Principal's policy documents create no obligation to notify Melanjo's participants and beneficiaries regarding modifications to the policy. Instead, they argue that the alleged duty arose from Principal's sole authority to modify the policy.

In support of their contention, appellants cite language from the policy that states: "No agent or other individual except an Officer of [Principal] has authority to make or modify this Policy . . . ." A subsequent provision of the policy, however, requires that modifications be endorsed by both Melanjo and an officer of Principal. The appellants argue that section 8 of the policy grants Principal the authority to terminate coverage without reason. That provision, however, grants Melanjo a grace period for payment of premiums; it says nothing about a unilateral power on Principal's part to terminate coverage.

We conclude that the foregoing policy provisions are nothing more than standard provisions typically found in an insurance policy, and that they, neither singly nor in combination, transform Principal from insurer to fiduciary.

Finally, the appellants point to no evidence that Principal had a practice of delivering notice to participants or a beneficiary other than by means of the normal correspondence involved in claims handling and review. Since Principal at no time performed the notification functions at issue, the obligation to perform those functions fell squarely on Melanjo, the plan administrator. See Kerns, 992 F.2d at 217.

Even if it were held that Principal was acting in a fiduciary capacity when it amended Mark Molasky's application, the appellants could not prevail, for the district court found that Principal's employees consulted with Melanjo before making the change. Although Principal's employees had difficulty recollecting their communications with Melanjo employees, the district court found that it was Principal's customary practice to consult with either the policy holder or its agent before amending an application. Thus, the change was made not as a result of a breach of fiduciary duty, but as the consequence of consultation with the policy holder.

"A district court's choice between two permissible views of evidence cannot be clearly erroneous." Estate of Davis by Ostenfeld v. Delo, 115 F.3d 1388, 1393 (8th Cir. 1997). We conclude that the foregoing findings are not clearly erroneous. Similarly, we find no error in the other factual findings contested by the appellants.

The appellants contend that the district court erroneously admitted numerous exhibits into evidence over their objections. We review the court's evidentiary rulings for a "clear and prejudicial abuse of discretion." Pittman v. Frazer, 129 F.3d 983, 989 (8th Cir. 1997). The appellants have failed to cite any legal authority in support of their argument, however, and "it is not this court's job to research the law to support an appellant's argument." Lusby v. Union Pacific R.R. Co., 4 F.3d 639, 642 (8th Cir. 1993); see Fed. R. App. P. 28(a)(6). In any event, we find no abuse of discretion in the district court's admissibility rulings.

Finally, the appellants argue that the district court abused its discretion in awarding Principal its attorney fees and costs under 29 U.S.C. 1132(g) by failing to make the findings required by our holding in Lutheran Med. Ctr., of Omaha, Nebraska v. Contractors, Laborers, Teamsters and Engineers Health & Welfare Plan, 25 F.3d 616, 623 (8th Cir. 1994). Reaffirming our earlier decisions on this issue, we held that a district court must consider the following factors before awarding attorney fees in ERISA litigation: "[T]he degree of culpability or bad faith; the ability to pay an award

for attorney fees; the deterrent effect an award would have on others; whether the attorney fees are requested to benefit the other plan participants or to resolve legal issues; and the relative merits of the parties' positions." 25 F.3d at 623. The district court's order awarding fees and costs reflects no consideration of these factors. Accordingly, we reverse the fee order and remand the case to the district court for further proceedings on the matter of fees and costs.

The order dismissing the action is affirmed. The order awarding attorney fees and costs is reversed, and the case is remanded to the district court for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.