# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1611

_____

| | | |
|---|---|---|
| Malan F. Johnston, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Paul Revere Life Insurance Company, | * | District of Nebraska |
| now known as Provident Insurance | * | |
| Company, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  October 24, 2000

Filed:  February 20, 2001

_____

Before McMILLIAN, LAY and ROSS, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Malan F. Johnston ("Johnston") appeals from a final judgment entered in the United States District Court for the District of Nebraska in favor of Paul Revere Life Insurance Company ("Paul Revere").[1] See Johnston v. Paul Revere Life Insurance Co., No. 8:96CV305 (D. Neb. Jan. 21, 2000) (Judgment). For reversal, Johnston

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

argues that: (1) the district court erred in holding that his state law claim for equitable relief pursuant to Neb. Rev. Stat. § 44-710.13 is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a), and (2) the district court erred in holding that, because it does not fall within the business of insurance, the Nebraska statute is not "saved" from ERISA preemption, pursuant to 29 U.S.C. § 1144(b)(2)(A); (3) the district court erred in finding that the Paul Revere was not a fiduciary within the meaning of ERISA, 29 U.S.C. § 1002(21), in regard to the administration of a disability plan in which he was a participant and erred in finding that Paul Revere did not breach the fiduciary duty imposed by ERISA, 29 U.S.C. § 1104(a). Johnston also argues that (4) the district court abused its discretion by striking four witnesses from his pre-trial order.

The district court had jurisdiction pursuant to 28 U.S.C. § § 1331 and 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a). For the reasons stated below, we affirm the decision of the district court.

## Background

The undisputed facts establish that Johnston was a professional pilot employed by Western Pathology Consultants, P.C. ("Western Pathology"). In 1991, Western Pathology decided to update its long term disability policy for its professional and supervisory employees and contacted Richard Mead, an insurance agent for Paul Revere, who had provided insurance services to Western Pathology for over twenty-five years.

The updated plan was designed to provide "own occupation" coverage to assure income during an employee's earning lifetime if the employee became disabled from performing his or her professional occupation. It was determined that benefits for plan participants would be provided through individual policies purchased by the employee

and issued by Paul Revere.[2]  Eligible employees of Western Pathology met with Mead, who explained plan benefits and completed the necessary enrollment forms provided by Paul Revere.  Employees were given the choice of paying the premiums themselves or having Western Pathology make their payments.  To facilitate payment, Western Pathology was billed for monthly premiums, would pay the premiums in a lump sum, and then add the amount of each employee's individual premium to the employee's W-2 form at the end of the tax year.  Also, Mead delivered policy forms to Western Pathology.

Prior to issuing a policy for Johnston, Paul Revere issued twelve policies for employees of Western Pathology, all of which included "own occupation" coverage.  In 1991, Johnston met with Mead who explained the plan benefits and "own occupation" coverage.  Mead also completed for Johnson a Paul Revere disability policy application, which Johnston signed.  This application stated that "[a]cceptance by the Proposed Insured/Owner of any policy issued on this Application will ratify any changes listed under 'Corrections and Amendments (For Home Office Use Only).'"  Paul Revere then generated a computer model showing premium benefit amounts for Johnson, with monthly premiums including "own occupation" coverage, billed at $94.40 a month.

After the policy was issued, Mead received a message from a Paul Revere representative stating that the policy was issued as submitted.  However, on the policy as issued, a handwritten note in the comments portion of the application stated  "delete

---

[2]The policies purchased through Paul Revere were actually "wrap around" policies.  Employees of Western Pathology could elect to participate in a short term disability policy issued by another insurance company; this policy would provide benefits during the first two years of disability.  The long term disability policy purchased through Paul Revere was designed to provide minimal benefit during the first two years of disability, but would provide a larger benefit after that period until the participant reached the age of sixty-five.

own occ." Mead did not read the policy before delivering it to Western Pathology, nor did he communicate to Johnston that there was a change in the policy. Mead did, however, inform both Johnston and Western Pathology that the policy was issued as "applied for." In 1993, Johnston became disabled and submitted a claim to Paul Revere, which claim was honored, although own occupation coverage was denied. At this time he first learned that the policy application had been changed to delete own occupation coverage. [3]

## Procedural History

Johnston initially filed a claim in Nebraska state court seeking declaratory relief and alleging that Paul Revere wrongfully altered his application for disability insurance in violation of Neb. Rev. Stat. § 44-70.13.[4] This statute prohibits the alteration of a written application for any policy for sickness insurance without the written consent of the applicant.[5] In June 1996, Paul Revere filed an answer with affirmative defenses,

---

[3]"Own occupation" coverage is desirable because, pursuant to such coverage, if Johnston were to generate sufficient income from other employment, his monthly benefit under the policy would not be reduced. Without such coverage, the benefit would be reduced.

[4]After losing his medical certificate pursuant to the report of a flight physician, Johnston worked a variety of jobs. However, he did not generate sufficient income to effect a reduction in his monthly benefit under the terms of the policy as issued. Under these circumstances Johnson appropriately filed a complaint seeking declaratory judgment. See 28 U.S.C. § 2201.

[5]Neb. Rev. Stat. § 44-710.13 states :

No alteration of any written application for any policy of sickness and accident insurance shall be made by any person other than the applicant without his or her written consent, except that insertions may be made by the insurer, for administrative purposes, only, in such a manner as to indicate clearly that such are not to be ascribed to the applicant.

including the assertion that the matter was governed by ERISA, and, in May 1996, the matter was removed to federal district court based on diversity jurisdiction, 28 U.S.C. § 1332. Discovery closed in March 1998, and a pre-trial order was entered in April 1998.

In May 1998, the district court ruled that the matter was preempted by ERISA § 514, 29 U.S.C. § 1144, and ordered Johnston either to re-plead his case or risk dismissal. See Johnston v. Paul Revere Life Insurance Company, No. 8:96CV305 (D. Neb. May 4, 1998) (Memorandum and Order).[6] The district found that because the state statute "relates to" Western Pathology's benefit plan, ERISA operates to preempt Johnston's state law claim and that the state law claim was not precluded from preemption by the "savings clause" of ERISA, 29 U.S.C. § 1144(b)(2)(A). See Id., slip op. at 11, 13. Johnston filed an amended complaint alleging violations of ERISA, and, despite the prior ruling of the district court, renewed his state law claim. Subsequently, in July 1998, Johnston filed a motion to strike the pre-trial order and to re-open discovery. In August 1998, Paul Revere filed a motion to dismiss, and, on August 25, 1998, a magistrate judge issued an order striking the pre-trial order, but reserving a ruling on the motion to re-open discovery until after the court ruled on the motion to dismiss. By order dated March 4, 1999, the district court reaffirmed the prior preemption ruling, and on March 9, 1999, the magistrate judge denied Johnston's request to re-open discovery.

Paul Revere filed an answer to the amended complaint, and Johnston filed a third amended complaint, alleging a breach of fiduciary duty under ERISA § 409, 29 U.S.C. § 1109, and discrimination under ERISA § 510, 29 U.S.C. § 1140, and again renewing the state law claim. On August 5, 1999, the district court granted Paul Revere's motion

---

[6]The Honorable William G. Cambridge, Chief Judge, United States District Court for the District of Nebraska.

to dismiss as to Johnston's state law and ERISA discrimination claims, but denied the motion as to the ERISA breach of fiduciary duty claim.[7] See Johnston v. Paul Revere Life Insurance Company, No. 8:96CV305 (D. Neb. Aug. 5, 1999) (Memorandum and Order).[8]

On August 23, 1999, Johnston renewed his motion to re-open discovery. This latter motion was denied, and the matter was set for a pre-trial conference, during which the magistrate judge struck four of Johnston's non-expert witnesses because their names had not been disclosed during discovery and also struck two of Johnston's exhibits. Johnston sought review of this ruling to the district court. In November 1999, Paul Revere filed a motion for summary judgment on Johnston's only remaining claim, a breach of fiduciary duty under ERISA, which motion the district court granted. See Johnston v. Paul Revere Life Insurance Company, No. 8:96CV305 (D. Neb. Jan. 21, 2000) (Memorandum and Order). The district court held that neither the language of the application or the policy required Paul Revere to notify Johnston directly that it declined to provide own occupation coverage and that Paul Revere did not have a past policy of communicating directly with applicants about decisions denying requested coverage. The court further rejected Johnston's position that Paul Revere handled "virtually every aspect of plan administration" and, therefore, became a de facto plan administrator. The court concluded that Paul Revere and Mead performed traditional roles of insurer and agent and that neither exercised the degree of discretion that would make them ERISA fiduciaries. See id., slip op. at 9-10. The district court also denied

---

[7]Although the district court had previously ruled that Johnston's state law claim was preempted by ERISA, Johnston asserted that the decision of the United States Supreme Court in UNUM Life Ins. Co. v. Ward, 526 U.S. 358 (1999) (UNUM), required that the district court either vacate or amend its earlier ruling on preemption.

[8]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

Johnston's appeal of the order striking experts and exhibits.  See id.  This appeal followed.

## Discussion

On appeal, Johnston first argues that the district court erred in  dismissing his state law claim as preempted by ERISA.   "We review the district court's decision on ERISA preemption *de novo* because it is a question of federal law involving statutory interpretation."  Wilson v. Zoellner, 114 F.3d 713, 715 (8th Cir. 1997) (Wilson). ERISA seeks to comprehensively regulate certain employee welfare benefits and pension plans and to protect the interests of participants in these plans by establishing standards of conduct, responsibility, and obligations for fiduciaries, and   contains a preemption clause.  See Wilson, 114 F.3d at 715; Kuhl v. Lincoln National Health Plan of Kansas City, Inc., 999 F.2d 298, 301 (8th Cir. 1993).  ERISA's preemption provision states: "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b)."  ERISA § 514(a), 29 U.S.C. § 1144(a).

However, not all state law claims that somehow affect a plan as defined by ERISA are preempted.  (See discussion below regarding the definition of an ERISA plan pursuant to 29 U.S.C. § 1002.)  ERISA includes a savings clause, which exempts from ERISA preemption coverage certain categories of state law that regulate insurance.   This "savings clause" states "[e]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."   ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A).

## ERISA Plan

As a preliminary matter, we must determine if the disability insurance policy at issue was a "plan" within the meaning of ERISA because the existence of a "plan" is a prerequisite to the jurisdiction of ERISA. See Bannister v. Sorenson, 103 F.3d 632, 636 (8th Cir. 1996) (Bannister); Harris v. Arkansas Book Co., 794 F.2d 358, 360 (8th Cir. 1986) (Harris). ERISA defines a "plan" as "an employee welfare benefit plan." 29 U.S.C. § 1002(3). ERISA further defines an "employee welfare benefit plan," in pertinent part, as "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing . . . benefits in the event of sickness, accident, disability, death or unemployment. " 29 U.S.C. § 1002(1). "In determining whether a plan . . . (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." Harris, 794 F.2d at 360, citing Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982). "[N]o single action in itself necessarily constitutes the establishment of the plan." Id. at 360. However, an ERISA plan must embody a "set of administrative practices." Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 11-12 (1987).

Upon review of the undisputed facts in this matter, we hold that a reasonable person could conclude that Western Pathology did establish a plan within the meaning of ERISA that offered disability benefits to its employees. Also, a reasonable person could further ascertain the intended benefits, beneficiaries, the source of financing, and procedures for receiving benefits of the disability plan at issue. Because Western Pathology engaged in the ongoing administration of the plan by assisting in the application process, by maintaining the policy forms, by processing paperwork in conjunction with Mead, and by facilitating the payment of premiums, the plan embodied a set of administrative practices. We, therefore, hold, in agreement with the district court, that "a reasonable person [could] conclude that Western Pathology did

-8-

establish a plan that offered benefits to its employees, as evidenced by the offering of retirement and disability insurance policies to employees" and "by the administrative processing required of Western Pathology to provide such benefits." Memorandum and Order of May 4, 1998, slip op. at 6. We, therefore, hold that the disability policy at issue was part of a "plan" within the meaning of ERISA.

## ERISA Preemption

We next consider whether Johnston's state law claim is preempted by ERISA. Johnston's state claim is preempted if the Nebraska statute upon which Johnston relies "relate[s] to" an employee benefit plan within the meaning of ERISA § 514(a), 29 U.S.C. § 1144(a). In California Division of Labor Standards Enforcement v. Dillingham Construction, 519 U.S. 316, 324 (1997) (Dillingham), the Supreme Court stated that it has long acknowledged that the scope of the ERISA preemption provision is deliberately expansive. A state law may "relate to" an employee benefit plan and, therefore, be preempted, even if the state law was not designed to affect benefit plans and its effect on such plans is incidental. See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990). In Dillingham, 519 U.S. at 324, the Supreme Court devised a two-part test to determine if a state law "relates to" an employee benefit plan covered by ERISA. Pursuant to this inquiry, a state law relates to a covered employee benefit plan for purposes of § 514(a) if the plan "(1) has a connection with or (2) reference to such a plan." Id. (citations omitted). The Court directed courts to "look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." Id. at 325.

This court has held that a variety of tests are helpful when determining the effect of state law on an ERISA plan. See Bannister, 103 F.3d at 635, citing Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc., 947 F.2d 1341, 1344-45 (8th Cir. 1992) (Arkansas Blue Cross). Factors which are instructive in this regard include:

(1) whether the state law negates a plan provision; (2) the effect on primary ERISA entities and impact on plan structure; (3) the impact on plan administration; (4) the economic impact on the plan; (5) whether preemption is consistent with other provisions of ERISA; and (6) whether the state law at issue is an exercise of traditional state power.

Id., citing Arkansas Blue Cross, 947 F.2d at 1345-50.

We hold that Johnston's claim against Paul Revere arose from the administration of an ERISA plan, including the application for and subsequent issuance of a disability policy. Thus, pursuant to the analysis in Bannister, the state law has an impact on plan administration. We further find, in agreement with the district court, that Johnston's state law claim has a connection with and relates to an employee benefit plan and that, therefore, ERISA operates to preempt his state claim unless the ERISA savings clause is applicable. See Memorandum and Order of May 4, 1998, slip op. at 10.

**ERISA Savings Clause**

We must now determine whether Johnston's claim pursuant to Neb. Rev. Stat. § 44-710.13 escapes preemption under the ERISA savings clause, 29 U.S.C. § 1144(b)(2)(A) because it regulates insurance. In Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 724, 743 (1985) (Metropolitan Life), the Supreme Court provided a framework for determining whether a statute regulates insurance and explained that a state law regulates insurance if it falls within the reference to the business of insurance in the McCarran-Ferguson Act, 15 U.S.C. § § 1011et seq., which gave states the authority to regulate the business of insurance. As more recently stated in UNUM Life Ins. Co. v. Ward, 526 U.S. 358, 367 (1999) (UNUM), the Court first applies a "common-sense view of the matter" and then "considers three factors to determine whether the regulation fits within the 'business of insurance' as that phrase

is used in the McCarran-Ferguson Act," including "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." Id., citing Metropolitan Life, 471 U.S. at 743.

We first conclude that the Nebraska statute at issue does not clearly regulate insurance as a matter of common sense. As the district court noted, and we agree, UNUM holds that all three McCarran-Ferguson factors are "considerations to be weighed" but "none is necessarily determinative in itself." Id. at 373 (citations omitted). In further agreement with the district court, we hold that the Nebraska statute does not meet the first McCarran-Ferguson factor because it did not have the effect of transferring or spreading the policy holder's risk, but "instead solely regulates the actual written application for the insurance policy." Memorandum and Order of May 4, 1998, slip op. at 12-13. See Memorandum and Order of Aug. 5, 1999, slip op. at 5. As explained further by the district court, the Nebraska statute does not spread risk, "as would, for example, . . . a state law mandating coverage for a specific disease." Memorandum and Order of May 4, 1998, slip op. at 12-13.

Considering the second and third McCarran-Ferguson factors, we further hold, in agreement with the district court, that the "Nebraska statute does not dictate terms that must be included in an insurance policy, nor does it add anything substantive to the insurer-insured relationship or alter the bargain between them. Instead, the statute merely prohibits conduct that predates formation of the insurer-insured relationship." Memorandum and Order of Aug. 5, 1999, slip op. at 7. The Nebraska statute merely establishes a pre-contract prohibition governing the application procedure and does not govern or dictate the actual content of insurance policies.[9] Because none of the

---

[9]The California statutory provision at issue in UNUM, a "notice-prejudice rule," is distinguishable from Neb. Rev. Stat. § 44-710.13. The California provision required that an insurer must show prejudice before it can void liability for an insurance claim

McCarran-Ferguson factors are met, we hold, in agreement with the well-reasoned analysis of the district court, that Johnston's claim is not saved from ERISA preemption pursuant to 29 U.S.C. § 1144(b)(2)(A). We, therefore, conclude that the district court correctly dismissed Johnston's state claim as preempted by ERISA.[10]

## ERISA Fiduciary

We next consider Johnston's argument on appeal that, contrary to the conclusion of the district court in its summary judgment, Paul Revere was acting as a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and it breached the duty of loyalty imposed on an ERISA fiduciary under ERISA § 404, 29 U.S.C. § 1104(a).[11] See Memorandum and Order of Jan. 21, 2000. Section 3(21)(A) states that a person is an ERISA fiduciary only to the extent that:

_____

that is untimely. The Court held in UNUM that this provision served "as an integral part of the insurance relationship because it changes the bargain between insurer and insured; it effectively creates a mandatory contract term." UNUM, 526 U.S. at 360. The Court also held that the third McCarran-Ferguson factor was met because the state law was aimed at the insurance industry and did not merely impact it and that it need not "determine whether [the California notice-prejudice rule] satisfied the first, 'risk spreading,' McCarran-Ferguson factor, because the remaining factors . . . are securely satisfied." Id.

[10]In the Memorandum and Order filed May 4, 1998, the district court did not consider all three McCarran-Ferguson factors, but rather relied on its finding that the Nebraska statute does not transfer or spread the risk. In the Memorandum and Order filed August 5, 1999, the district court acknowledged that all three factors should be considered pursuant to the Supreme Court's analysis in UNUM. See UNUM, 526 U.S. at 367-68.

[11]29 U.S.C. § 1109 states that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach."

i) he exercises any discretionary authority or discretionary control respecting management of such plan or . . . disposition of its assets, (ii) he renders investment advice for a fee or other compensation . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

"Discretion" is the "benchmark for fiduciary status under ERISA" pursuant to the explicit wording of ERISA § 3(21)(A), 29 U.S.C. § 1002(21).  Maniace v. Commerce Bank of Kansas City, 40 F.3d 264, 267 (8th Cir. 1994).  ERISA further defines who is an ERISA fiduciary by setting forth the statutory responsibility of an ERISA fiduciary as one who "discharge[s] his [or her] duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of : (i) providing benefits to participants  . . .  and (ii) defraying reasonable expenses of administering the plan."  ERISA § 404, 29 U.S.C. § 1104(a)(1).

This court held in Kerns v. Benefit Life Insurance Co., 992 F.2d 214, 216 (8th Cir. 1993) (Kerns), that an insurance company does not become an ERISA fiduciary merely by handling claims under an employer's group policy and that insurers "have not traditionally stood in a fiduciary relationship with claimants and beneficiaries."  Id.  Although an insurer has a contractual obligation to pay valid claims, an insurer does not necessarily perform this function for "the exclusive purpose of providing benefits" as described in ERISA § 404.  See id.  Fiduciary status under ERISA is not an "all or nothing concept.  . . . [A] court must ask whether a person is a fiduciary with respect to the particular activity in question."  Id. at 217, citing Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992) ("[a] court must ask whether a person is a fiduciary with respect to the particular activity in question").  See  American Fed'n of Unions Local 102 v. Equitable Life Assurance Society, 841 F.2d 658, 662 (5th Cir.

1988) ("[a] person is a fiduciary only with respect to those portions of a plan over which he [or she] exercises discretionary authority or control").

These principles, which guide the court in making a determination as to whether an insurance company is an ERISA fiduciary, apply equally to an independent insurance broker such as Mead. See Kerns, 992 F.2d at 217-18. In particular, a person who provides professional services to the plan administrator, such as preparing "employee communications material . . . within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary." Id. at 218, citing 29 C.F.R. § 2509.75-8 D-2. "Persons who provide professional services to plan administrators 'are not ERISA fiduciaries unless they "transcend the normal role" and exercise discretionary authority.'" Id. at 217-18 (citations omitted).

Johnston relies on Olson v. E. F. Hutton & Co., 957 F.2d 622 (8th Cir. 1992) (Olson), in support of his position that Mead, as an insurance agent, became a fiduciary. However, Olson, in which trustees of a pension plan brought an action against an account broker who rendered investment advice, is factually distinguishable from the present case. The broker in Olson rendered investment advice to an employee benefit plan. Olson held that the account broker was a fiduciary under ERISA because he exercised discretionary authority over a pension plan; the broker and the trustees "had an understanding that [the broker's] investment advice would serve as the primary basis for investment decisions" for the plan. Id. at 627. Pursuant to the court's analysis of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), in Olson, we note that Mead neither possessed nor exercised  discretionary authority as did the broker in Olson. See id. at 626.

Under circumstances similar to those presented here, this court held in Molasky v. Principal Mutual Life Insurance Co., 149 F.3d  881, 884-85 (8th Cir. 1998) (Molasky), that an insurance company did not act in a fiduciary capacity where it

unilaterally made changes to a policy application. Molasky held that insurers who are not plan administrators have no duty to notify plan participants regarding changes unless past practices or policy documents create such an obligation.[12] Id. at 884, citing Kerns, 922 F.2d at 217. Not only did Johnston's application for disability insurance state that acceptance by the insured of the policy ratifies any changes listed under corrections and amendments, but no language in the application nor the policy required Paul Revere to notify Johnston that it declined "own occupation" coverage. Moreover, pursuant to past practice, Mead merely delivered the policy to Western Pathology. In agreement with the analysis of the district court, we hold that neither Paul Revere nor Mead exercised the requisite discretion to be considered ERISA fiduciaries. They conducted themselves as any other insurance company and broker issuing a policy of insurance would: Mead received a routine application for a policy and passed it on to Paul Revere through its normal underwriting process; Paul Revere then sent the policy with its "policy issue information sheet" back to Mead, who in turn delivered the policy to Western Pathology. Under these circumstances, we hold that neither Paul Revere nor Mead were ERISA fiduciaries in regard to the routine processing of Johnston's application, including participant and beneficiary notification, and, therefore, they could not and did not breach such a duty by failing to inform Johnston of the deletion of own occupation coverage. Because no genuine issues of material fact exist in this matter, and because we agree with the legal conclusions reached by the district court, we, hold

---

[12]Johnston suggests that Paul Revere "acted as the defacto plan administrator." Reply Brief for Appellant at 3. ERISA provides that if an employer, such as Western Pathology, has no plan document designating a plan administrator, the employer is the plan administrator. See 29 U.S.C. § 1002(16)(A)(ii) and (B)(i). Additionally, as found by the district court and as discussed above, Paul Revere and Mead performed the traditional roles of insurer and agent throughout the application and issuing process and were not involved in plan administration, managing the plan, or disposing of its assets. See Johnston v. Paul Revere Life Insurance Co., No. 8:96CV305 (D. Neb. Jan. 21, 2000), slip op. at 10.

that the district court did not err in granting summary judgment in favor of Paul Revere. See McCormack v. Citibank, N.A., 100 F.3d. 532, 534 (8th Cir. 1996).

## Conclusion

We affirm the decision of the district court  holding that Johnston's state claim is  preempted by ERISA and that this claim is not  saved from preemption by the ERISA savings clause.   Additionally, we affirm the decision of  the district court holding that Paul Revere and Mead were not  ERISA fiduciaries and that they did not breach the duties imposed by ERISA upon fiduciaries.  Therefore, we need not decide whether the district court abused its discretion by striking four of Johnston's witnesses from his witness list.  Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.