**Lisa HOWARD, Plaintiff,**

v.

**COVENTRY HEALTH CARE OF IOWA, INC., Principal Financial Group, Inc. and Principal Mutual a/k/a Principal Life Insurance Company, Defendant.**

No. 4–01–CV–10196.

United States District Court,
S.D. Iowa,
Central Division.

July 20, 2001.

Roxanne Conlin, Conlin & Associates, P.C., Des Moines, IA, for plaintiff.

Michael W. Thrall, Nyemaster Goode Voigts West Hansell & O'Brien, P.C., Des Moines, IA, for Coventry Health Care of IA, Inc.

Brian L. Campbell, Bradshaw Fowler Proctor & Fairgrave, Des Moines, IA, for Principal Financial Group, Inc., Principal Mutual Life Insurance Co., aka Principal Life Insurance Co.

## ORDER

LONGSTAFF, Chief Judge.

Before the Court are motions by the defendants in this case to dismiss and to strike plaintiff's jury demand. Coventry Health Care of Iowa, Inc. ("Coventry"),[1]

---

1. Coventry was formerly known as Principal Health Care of Iowa, Inc.

defendant, filed motions to dismiss and strike plaintiff's jury demand on April 2, 2001. The remaining defendants, Principal Financial Group, Inc. and Principal Mutual (collectively, "Principal"), filed a motion to dismiss and adopted the arguments made by Coventry on April 19. Plaintiff, Lisa Howard, filed her resistance to these motions on June 15. A reply brief was filed by Coventry on July 3 and by Principal on July 6. A hearing has been requested but found unnecessary. The matters are fully submitted.

## I.  BACKGROUND

For purposes of this motion, the following facts either are not in dispute or are accepted as alleged in plaintiff's complaint. Lisa Howard seeks to represent herself and all other women who have had, or may have, dealings with defendants. Howard had a double mastectomy due to breast cancer on or about November 22, 1993. Tissue expanders were placed in Howard's chest during this surgery. Howard had the expanders removed on June 3, 1994, and saline implants were then placed in her chest. These implants caused medical complications, and were removed and replaced with tissue expanders on November 4, 1994.

Coventry became Howard's health insurance provider on January 1, 1995, as she was insured through an employee benefit plan. Howard had another surgery on or about November 3, 1995. During this procedure, the expanders were again removed and replaced with saline implants. These implants remained in Howard until January 23, 1998, when they were removed

and expanders were implanted for a third time. This surgery was necessary because Howard had developed capsular contracture from her breast implants. Following this surgery, her reconstructive surgeons at the Mayo Clinic recommended she receive McGhan anatomical silicone implants. Howard received approval from Coventry on November 13, 1999 to receive McGhan implants in her chest by a doctor at the University of Missouri. Howard set up a surgical appointment to have this procedure done, but later had to cancel it due to other medical issues.

After cancelling her appointment at the University of Missouri, Howard learned that the same procedure could be performed at a clinic in St. Cloud, Minnesota. This facility was closer to her home, and one of her doctors from the Mayo Clinic recommended that she have the surgery performed at the St. Cloud clinic. Howard sought approval from Coventry to have this procedure performed at St. Cloud, but was denied.

As noted above, this matter has been brought by Howard as a class action.[2] She originally filed her petition in Iowa District Court for Polk County on March 2, 2001. Defendants removed to this Court on March 29, 2001 alleging federal question jurisdiction. *See* 28 U.S.C. § 1331. Plaintiff has brought four claims. She alleges a tortious breach of statute, citing 29 U.S.C. § 1185 (Count I);[3] breach of contract (Count II); violation of public policy (Count III); and bad faith (Count IV). In her original petition, plaintiff made a jury demand.[4]

---

**2.**  While this matter has been brought as a class action, the Court will refer to plaintiff in the singular tense as the matter is not certified.

**3.**  Plaintiff asserts Count I is not brought under ERISA, 29 U.S.C. § 1001 *et seq.*, but rather is a common law cause of action de-

rived from the legislative intent of the statute itself, 29 U.S.C. § 1185. Furthermore, plaintiff is adamant that none of the claims she has made are governed or preempted by ERISA.

**4.**  As the Court grants defendants' motion to dismiss, it will not address the motion to strike the jury demand.

## II. APPLICABLE LAW & DISCUSSION

### A. Standard of Review

When considering a motion to dismiss, a court will accept as true all factual allegations in the complaint. *McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739, 740 (8th Cir.1996) (citing *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 163–65, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). A motion to dismiss will be granted "only if no set of facts would entitle the plaintiff to relief."' *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45–47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### B. Tortious Breach of Federal Statute

Howard alleges in Count I that 29 U.S.C. § 1185b has been breached by defendants. Section 1185b, enacted in 1998, is entitled "Required coverage for reconstructive surgery following mastectomies." It states in pertinent part:

(a) In general

A group health plan, and a health insurance issuer providing health insurance coverage in connection with a group health plan, that provides medical and surgical benefits with respect to a mastectomy shall provide, in a case of a participant or beneficiary who is receiving benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, coverage for -

(1) all stages of reconstruction of the breast on which the mastectomy has been performed;

(2) surgery and reconstruction of the other breast to produce a symmetrical appearance; and

(3) prostheses and physical complications of mastectomy, including lymphedemas;

in a manner determined in consultation with the attending physician and the patient. Such coverage may be subject to annual deductibles and coinsurance provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan or coverage. Written notice of the availability of such coverage shall be delivered to the participant upon enrollment and annually thereafter.

. . .

(e) Preemption, relation to State laws -

(1) In general

Nothing in this section shall be construed to preempt any State law in effect on October 21, 1998 with respect to health insurance coverage that requires coverage of at least the coverage of reconstructive breast surgery otherwise required under this section.

(2) ERISA

Nothing in this section shall be construed to affect or modify the provisions of section 1144 of this title with respect to group health plans.

*Id.* This statute was part of the Women's Health and Cancer Rights Act. It passed as part of the Omnibus Appropriations Bill in 1998 and amended both the Public Health Service Act and the Employee Retirement Income Security Act ("ERISA"). It is the latter of these two amended acts which is at issue in this case.

ERISA, 29 U.S.C. §§ 1001 *et seq.*, comprehensively regulates employee pension and welfare plans. A welfare plan is one "maintained by an employer ... for the purpose of providing ... [employees with] medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." *Wiggins v. Guardian Life Ins. Co. of America,* 820 F.Supp. 419, 420 (N.D.Iowa 1993) (quoting 29 U.S.C. § 1002(1)). It is not disputed by Howard that the plan at issue was such a welfare plan under ERISA.

In general, claims for relief involving ERISA welfare plans must be filed under

29 U.S.C. § 1132. A plan participant, such as Howard, generally may bring a civil action under this statute to recover benefits due under the terms of her plan, to enforce her rights under the terms of her plan, or to clarify her rights to future benefits under the terms of her plan. *See* RONALD J. COOKE, ERISA PRACTICE AND PROCEDURE § 8.3 (citing 29 U.S.C. § 1132(a)(1)(B)). However, Howard has not brought any claims under this civil enforcement statute, but has instead argued that she has an implied[5] cause of action based on section 1185b and that ERISA law is not controlling.

▮▮▮▮ As pointed out by the parties, this Court must determine whether a private cause of action was created by section 1185b and whether such a remedy may be implied under the four-part framework set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The four *Cort* factors are: (1) whether plaintiff is one of the class for whose benefit the statute was enacted; (2) whether there is any explicit or implicit indication of legislative intent either to create such a remedy or deny one; (3) whether such a remedy is consistent with the legislative scheme; and (4) whether such a cause of action is traditionally relegated to state law, in an area of primary concern for the states. *See Redd v. Federal Land Bank of St. Louis,* 851 F.2d 219 (8th Cir.1988) (citing *Cort,* 422 U.S. at 78, 95 S.Ct. 2080). " 'The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action.' " *Id.* (quoting *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (other citation omitted)).

Section 1185b was clearly enacted for the benefit of breast cancer patients who require reconstructive surgery following mastectomies. Howard is a part of this class, and the first *Cort* factor weighs in favor of finding such an implied cause of action. Additionally, there does not appear to be a state law impediment to applying such a remedy in accord with the fourth *Cort* factor. However, the remaining *Cort* factors weigh heavily against finding an implied cause of action. Neither the parties' briefs nor this Court's independent research of this statute and its legislative history has revealed any legislative intent to create such a remedy supplemental to remedies available within ERISA.[6] Further, this Court finds the

---

**5.** Howard does not assert the statute expressly creates a private cause of action.

**6.** The legislative history shows the Women's Health and Cancer Rights Act was intended to "ban drive-through mastectomies" and to require that insurance plans cover the costs of breast reconstruction surgeries. *See Women's Health and Cancer Rights Act,* 1998 WL 235685 (Cong.Rec.), 144 Cong. Rec. S4644–01 at *S4646 (May 12, 1998). Senator Feinstein from New York made clear that the Act was geared toward placing requirements on *insurance plans,* and nothing in the legislative history indicates it was designed to give a private right of action independent of ERISA:

This bill is simple. It requires every *insurance plan* in the United States of America to cover the hospital length of stay determined by the physician to be medically necessary. It does not prescribe a fixed number of days. It does not set a minimum. It leaves the length of the hospital stay for the mastectomy up to the treating physician.

Secondly, it requires health *insurance plans* to cover breast reconstruction following a mastectomy.

Thirdly, it requires *insurance plans* to cover breast prostheses and complications of mastectomy, including lymphedema.

And finally, it prohibits *insurance plans* from financially penalizing or rewarding a physician for providing medically necessary care or for referring a patient for a second opinion.

*Id.* at * S4647 (emphasis added). Further, while the Women's Health and Cancer Rights Act was made law in the context of the debate over the broad patient rights bill, legislative history shows that it was intended to be a

Supreme Court's decision in *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) persuasive. In addressing an attempt by a plaintiff to bring an implied cause of action under a separate ERISA statute (29 U.S.C. § 1109), the Supreme Court refused to find such a cause of action.

> The six carefully integrated civil enforcement provisions found in § 502(a) [29 U.S.C. § 1132] of the statute as finally enacted, however, provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a "comprehensive and reticulated statute."

*See Russell,* 473 U.S. at 146, 105 S.Ct. 3085. *See also Trenton v. Scott Paper Co.,* 832 F.2d 806, 810 (3rd Cir.1987) (while addressing a purported claim under a different ERISA statute, the court still held that the *Russell* Court's instruction regarding ERISA's remedial nature made it inappropriate to imply a private cause of action).

Plaintiff has argued that her claim does not "relate to" a benefit plan, and is not an ERISA claim, but instead rests on the violation of a federal statute governing defendants' actions. Plaintiff characterizes her claim as involving an issue of the quality of care mandated of breast cancer patients, and is not a claim of denial of care. In support of her position plaintiff cites *Pegram v. Herdrich,* 530 U.S. 211, 235–36, 120 S.Ct. 2143, 2158–59, 147 L.Ed.2d 164 (2000) for the proposition that

claims involving quality of care matters are not preempted by ERISA.

In that case, Cynthia Herdrich had been seen by Dr. Lori Pegram for pain in her groin area at a clinic which functioned as part of a health maintenance organization ("HMO"). *Id.* at 2147. This clinic contracted with Herdrich's husband's employer, through whom she received health insurance coverage. *Id.* Despite noticing an inflammation, Dr. Pegram decided not to do an ultrasound diagnostic procedure at a local hospital but rather required Herdrich to wait eight days and drive fifty miles to perform the ultrasound. *Id.* In the meantime, Herdrich's appendix ruptured causing peritonitis. *Id.* Herdrich then brought suit in state court for medical malpractice and state-law fraud. *Id.* After defendants removed the matter to federal court, Herdrich added a claim under ERISA for breach of a fiduciary duty against the HMO, 29 U.S.C. § 1109(a). *Id.*

In *Pegram* the Supreme Court found the plaintiff could not maintain her ERISA claim because mixed decisions by fiduciaries of a benefit plan concerning both matters of treatment and eligibility were not intended to be classified as fiduciary decisions under ERISA. *Pegram,* 120 S.Ct. at 2158. The Supreme Court found that Congress did not intend a decision by the HMO to postpone an ultrasound for eight days to be one that fell under the rubric of ERISA fiduciary administrative functions. *Id.* at 2156. The *Pegram* Court went on to state that plaintiff's claims were under state law and could be adequately addressed in state court, and that there was no benefit in providing the plan participant with an ERISA fiduciary action. *Id.* at 2158.

"narrow" enactment. *Id.* at *S4646 (Senator Boxer). *See also Omnibus Appropriations Conference Report,* 1998 WL 734052 (Cong. Rec.), 144 Cong. Rec. S12810–06 at *S12825 (October 21, 1998) (statement of Senator D'Amato of New York).

Clearly the *Pegram* decision addressed ERISA actions in the context of claims for breach of duties by plan fiduciaries. No such claim is at issue in the present case. Further, *Pegram* did not decree that all quality of care [7] claims are necessarily outside the ERISA arena and does not support plaintiff's contention that she has a cause of action based on an ERISA statute other than 29 U.S.C. § 1132.

▮ Based on the foregoing, this Court finds there is no implied private cause of action created by 29 U.S.C. § 1185b.

### C. Remaining State Law Claims

▮ Plaintiff has brought claims for breach of contract, violation of public policy, and bad faith based on Iowa common law. However,

> ERISA supersedes state laws insofar as they "relate to any employee benefit plan." 29 U.S.C. § 1144(a). To this end, the language of ERISA's preemption clause sweeps broadly, embracing common law causes of action if they have a connection with or a reference to an ERISA plan. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987).

*Shea v. Esensten*, 107 F.3d 625 (8th Cir. 1997) (finding plaintiff's state law claims for fraudulent nondisclosure and misrepresentation were pre-empted by ERISA). An exception to the doctrine of ERISA express or complete preemption is found in the savings clause, 29 U.S.C. § 1144(b)(2)(A), which allows claims brought under laws of the state which regulate insurance.

▮ In this case, the Court finds plaintiff's state law claims do "relate to" her employee benefit plan, and are expressly preempted by section 1144. A state law claim for breach of contract is preempted by ERISA, and thus Count II is preempted. *See Molasky v. Principal Mutual Life Ins. Co.*, 149 F.3d 881, 884 (8th Cir.1998) (citing *Walker v. National City Bank of Minneapolis*, 18 F.3d 630, 634 (8th Cir. 1994) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 . U.S., 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987))). The only contract at issue here is the one provided to Howard under the plan providing her health benefits, and it is not disputed that this is an ERISA plan. Count III, alleging a violation of public policy, is likewise preempted. While federal law may sometimes be a valid ground under which to bring such a claim, *see Smuck v. Nat'l Mgmt. Corp.*, 540 N.W.2d 669, 672 (Iowa.App. 1995) (holding federal law can be the grounds to find public policy violation for purposes of a wrongful discharge claim), this is not such a claim. The federal law at issue is under the ERISA statute, and hence section 1132 provides the exclusive civil enforcement remedies. Finally, Count IV is also preempted. A claim of bad faith under Iowa law in this case necessarily rests on the defendants' plan's decision regarding the reconstructive surgery sought by Howard.

▮ Turning now to the exception from preemption provided to plaintiffs bringing state law claims by the savings clause, 29 U.S.C. § 1144(b)(2)(A), the Court finds that none of plaintiff's claims are based on laws that regulate insurance. Rather, plaintiff's claims rest on rules of law that have no direct relation to insurance. The Eighth Circuit reiterated the factors to be considered in this context in *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 630. First, courts are to ask " 'whether the practice [implicated by the

---

7. This Court need not address whether plaintiff's claim can, or should be, labeled as a "quality of care" issue. Plaintiff has alleged a violation of a federal statute, and the Court is treating Count I as such.

state law] has the effect of transferring or spreading a policyholder's risk; second, whether the practice [implicated by the state law] is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." *Id.* (citing *UNUM Life Ins. Co. v. Ward,* 526 U.S. 358, 367, 119 S.Ct. 1380, 143 L.Ed.2d 462 and *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 743, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985)). After considering all of these factors, this Court finds that none of the grounds upon which plaintiff's state law claims rest satisfies the standard. *See also Johnston,* 241 F.3d at 631 (holding that a Nebraska statute prohibiting the written application for insurance policies did not "regulate insurance" such as to qualify for the savings clause).

## III.   CONCLUSION

Defendants' motion to dismiss is granted.   The Clerk of Court shall enter judgment in favor of defendants.

IT IS SO ORDERED.